Opinion issued September 17, 2009
  
 
  



             

 







 
 




In The
Court of Appeals
For The
First District of Texas
____________

NO. 01-08-00684-CV
____________

ACCUFLEET, INC., Appellants

V.

HARTFORD FIRE INSURANCE COMPANY, Appellee




On Appeal from the 55th District Court
Harris County, Texas
Trial Court Cause No. 2006-24887



 
O P I N I O N

          In this insurance coverage dispute, AccuFleet, Inc. (“AccuFleet”) appeals from
the trial court’s granting summary judgment in favor of Hartford Fire Insurance
Company (“Hartford”), and denying AccuFleet’s cross-motion for summary
judgment. In two issues, AccuFleet argues that Hartford breached the insurance
policy by failing to (1) defend AccuFleet and Continental Airlines, Inc.
(“Continental”), an additional insured under the policy, and (2) indemnify
Continental. We affirm the judgment of the trial court regarding Hartford’s duty to
defend and indemnify Continental. We reverse the judgment of the trial court
regarding Hartford’s duty to defend AccuFleet.Factual and Procedural Background
          AccuFleet is an aviation support business that contracts with airline carriers to
provide various support services, including cleaning aircraft interiors and exteriors
at airports. AccuFleet entered into a contract with Continental to provide ground
support services to Continental at Newark International Airport. This services
contract required AccuFleet to obtain and maintain insurance coverage, including
automobile liability insurance and airport owners’ and operators’ general liability
insurance. The contract also required that Continental be named as an additional
insured under AccuFleet’s policies and that the insurance provided for Continental
be primary, without the right of contribution from any insurance policy carried by
Continental. 
          In January 2003, a ground tug—transporting luggage and driven by a
Continental baggage handler—rear-ended an AccuFleet vehicle stopped at a stop
sign on the tarmac. Gonzalo Escobar (“Escobar”), an AccuFleet employee, was a
passenger in the AccuFleet vehicle and allegedly was injured in the collision. 
Escobar sued both AccuFleet and Continental in New Jersey state court for back
injuries allegedly caused by the collision. 
          The AccuFleet vehicle involved in the collision was covered by an automobile
insurance policy issued by Hartford to AccuFleet. Both Continental and AccuFleet
made a written request to Hartford that it defend and indemnify Continental and
AccuFleet in the Escobar lawsuit. Continental’s demand was based on the claim that
Continental was “an additional insured” under the policy. Hartford did not respond
to either of these demands.
           Subsequently, Continental paid Escobar $250,000 to settle the lawsuit.
Continental made a demand to Hartford to be indemnified for the settlement amount.
Hartford refused this demand. AccuFleet agreed to pay Continental a percentage of
Continental’s attorneys’ fees in the Escobar lawsuit and the amount Continental paid
to Escobar in settlement, and it took an assignment of Continental’s claims against
Hartford.
          Accufleet filed this suit against Hartford, claiming breach of contract, violation
of the duty of good faith and fair dealing, and violations of the Texas Insurance
Code.


 The trial court severed and abated AccuFleet’s extra-contractual claims
against Hartford, leaving only AccuFleet’s breach of contract claims, brought on its
own behalf and on behalf of Continental, against Hartford. In these claims,
AccuFleet contends that Hartford unlawfully refused to defend Continental and
AccuFleet in the Escobar lawsuit and failed to indemnify Continental for amounts
paid in settlement of the Escobar lawsuit. 
          Hartford moved for summary judgment on AccuFleet’s breach of contract
claims and AccuFleet filed its own cross-motion for summary judgment against
Hartford on Hartford’s liability for breach of contract. The trial court entered final
judgment granting Hartford’s motion for summary judgment and denying AccuFleet’s
motion for summary judgment. AccuFleet filed the instant appeal. 
Summary Judgment Standard of Review
          To prevail on a summary judgment motion, a movant has the burden of proving
that it is entitled to judgment as a matter of law and that there is no genuine issue of
material fact. Tex. R. Civ. P. 166a(c); Cathey v. Booth, 900 S.W.2d 339, 341 (Tex.
1995). A plaintiff moving for summary judgment on its claim must establish its right
to summary judgment by conclusively proving all the elements of its cause of action
as a matter of law. Rhone-Poulenc, Inc. v. Steel, 997 S.W.2d 217, 223 (Tex. 1999);
Anglo-Dutch Petroleum Int’l, Inc. v. Haskell, 193 S.W.3d 87, 95 (Tex.
App.—Houston [1st Dist.] 2006, pet. denied). When a defendant moves for summary
judgment, it must either (1) disprove at least one essential element of the plaintiff’s
cause of action or (2) plead and conclusively establish each essential element of its
affirmative defense, thereby defeating the plaintiff’s cause of action. Cathey, 900
S.W.2d at 341; Yazdchi v. Bank One, Tex., N.A., 177 S.W.3d 399, 404 (Tex.
App.—Houston [1st Dist.] 2005, pet. denied). When both parties move for summary
judgment and the trial court grants one motion and denies the other, the reviewing
court should review the summary judgment evidence presented by both sides and
determine all questions presented and render the judgment that the trial court should
have rendered. Tex. Workers’ Comp. Comm’n v. Patient Advocates of Tex., 136
S.W.3d 643, 648 (Tex. 2004).
Discussion
          In its first issue, AccuFleet contends that the trial court erred in granting
Hartford’s motion for summary judgment on AccuFleet’s breach of contract claims
because AccuFleet has established as a matter of law that Hartford breached the terms
of AccuFleet’s automobile policy by refusing to provide a defense to Continental and
AccuFleet in the Escobar lawsuit. In its second issue, AccuFleet contends that the
trial court erred in granting Hartford’s motion because AccuFleet has established as
a matter of law that Hartford breached the terms of the policy by refusing to
indemnify Continental for the amounts it paid in settlement of the Escobar lawsuit. 
(Appellant’s Brief at 18). We address each of these arguments below. 
Under the Terms of the Policy, Did Hartford Owe Both Continental and
AccuFleet a Duty to Defend?

A. Law Concerning the Interpretation of Insurance Policies
          The plain language of an insurance policy, like that of any other contract, must
be given effect when the parties’ intent may be discerned from the plain language. 
Utica Nat’l Ins. Co. of Tex. v. Am. Indem. Co., 141 S.W.3d 198, 202 (Tex. 2004). If
the policy language has only one reasonable interpretation, then it is not ambiguous,
and we construe it as a matter of law. Fiess v. State Farm Lloyds, 202 S.W.3d 744,
746 (Tex. 2006); Am. Mfrs. Mut. Ins. Co. v. Schaefer, 124 S.W.3d 154, 157 (Tex.
2003). If the contract is susceptible to two or more reasonable interpretations, then
it is ambiguous and we must resolve the uncertainty by adopting a construction that
favors the insured as long as that construction is not unreasonable. Fiess, 202 S.W.3d
at 746 (citing Nat’l Union Fire Ins. Co. v. Hudson Energy Co., 811 S.W.2d 552, 555
(Tex. 1991)). “When interpreting an insurance contract, we ‘must adopt the
construction of an exclusionary clause urged by the insured as long as that
construction is not unreasonable, even if the construction urged by the insurer appears
to be more reasonable or a more accurate reflection of the parties’ intent.’” Evanston
Ins. Co. v. ATOFINA Petrochems., Inc., 51 Tex. Sup. Ct. J. 460, 2008 WL 400394,
at *5 (Tex. Feb. 15, 2008) (quoting Nat’l Union Fire Ins. Co., 811 S.W.2d at 555).
“‘Exceptions or limitations on liability are strictly construed against the insurer and
in favor of the insured,’ and ‘[a]n intent to exclude coverage must be expressed in
clear and unambiguous language.’” Id. (quoting Nat’l Union Fire Ins. Co., 811
S.W.2d at 555).
B.      Duty to Defend
          The duty to defend is distinct from, and broader than, the duty to indemnify.
Zurich Am. Ins. Co. v. Nokia, Inc., 268 S.W.3d 487, 491 (Tex. 2008). An insurer
must defend its insured if a plaintiff’s factual allegations potentially support a
covered claim, while the facts actually established in the underlying suit determine
whether the insurer must indemnify its insured. GuideOne Elite Ins. Co. v. Fielder
Rd. Baptist Church, 197 S.W.3d 305, 310 (Tex. 2006). Thus, an insurer may have a
duty to defend but, eventually, no obligation to indemnify. Farmers Tex. County
Mut. Ins. Co. v. Griffin, 955 S.W.2d 81, 82 (Tex. 1997).
          In determining a duty to defend, we follow the eight-corners rule, also known
as the complaint-allegation rule: “an insurer’s duty to defend is determined by the
third-party plaintiff’s pleadings, considered in light of the policy provisions, without
regard to the truth or falsity of those allegations.” GuideOne, 197 S.W.3d at 308. 
Thus, “[e]ven if the allegations are groundless, false, or fraudulent, the insurer is
obligated to defend.” Zurich Am., 268 S.W.3d at 491. We resolve all doubts
regarding the duty to defend in favor of the duty. King v. Dallas Fire Ins. Co. v.
Merchs. Fast Motor Lines, Inc., 939 S.W.2d 139, 141 (Tex. 1997). “Where the
complaint does not state facts sufficient to clearly bring the case within or without the
coverage, the general rule is that the insurer is obligated to defend if there is,
potentially, a case under the complaint within the coverage of the policy.” Heyden
Newport Chem. Corp. v. S. Gen. Ins. Co., 387 S.W.2d 22, 26 (Tex. 1965); see also
Gore Design Completions, Ltd. v. Hartford Fire Ins. Co., 538 F.3d 365, 368 (5th Cir.
2008) (noting that “[t]he rule is very favorable to insureds because doubts are
resolved in the insured’s favor”). The duty to defend is not impacted by facts
ascertained before suit, developed in the course of litigation, or by the ultimate
outcome of the suit. Trinity Universal Ins. Co. v. Cowan, 945 S.W.2d 819, 829 (Tex.
1997). “If a complaint potentially includes a covered claim, the insurer must defend
the entire suit.” Zurich American, 268 S.W.3d at 491.
C.      The Language of AccuFleet’s Policy
          With this in mind, we turn to the policy language at issue here. Hartford issued
a Special Multi-Flex Policy to AccuFleet, Inc. as its named insured. The policy
includes a Business Auto Coverage Form, providing for liability coverage for
damages the insured or some third parties must pay because of bodily injury resulting
from the use of a covered auto. The policy provides the following grant of liability
coverage:
We will pay all sums an “insured” legally must pay as
damages because of “bodily injury” or “property damage’
to which this insurance applies, caused by an “accident”
and resulting from the ownership, maintenance or use of a
covered “auto.”

          The policy defines “auto” as a “land motor vehicle, ‘trailer’ or semi-trailer
designed for travel on public roads.” “Auto” does not include “mobile equipment,”
such as vehicles designed for use principally off public roads. The policy also
excludes coverage for an insured’s liability resulting from the insured’s use of a
“mechanical device.”
D. Escobar’s Allegations
          In the underlying lawsuit, Escobar alleges that he was a passenger in a vehicle
owned by AccuFleet that had stopped at a stop sign on the tarmac of the Newark
airport. The vehicle was driven by Luis Hermosa, an AccuFleet employee. Escobar
alleges that, while it was stopped at the sign, the AccuFleet vehicle was rear-ended by
another vehicle, which was owned by Continental. Escobar further alleges that both
AccuFleet and Continental “negligently, carelessly, and recklessly operated” their
respective vehicles so as to cause the collision. Escobar alleges that as a result of the
negligence of both AccuFleet and Continental and their respective drivers, he
sustained serious and permanent personal injuries. 
E. Analysis
Continental
          We first address whether Continental meets the criteria to be covered under the
policy. In this case, it does not and thus Hartford does not owe Continental a duty to
defend. Under the facts alleged in Escobar’s pleading, Continental does not qualify
for liability coverage for damages under AccuFleet’s automobile policy. A third party,
such as Continental, may be covered under the terms of the policy if AccuFleet is
required by contract to name the party as an additional insured. Continental does meet
this first requirement. However, the third party is covered only if it also meets the
definition of an “insured” under the terms outlined in Section II of the policy. Under
the endorsement entitled “ADDITIONAL INSURED AND RIGHTS OF
RECOVERY AGAINST OTHERS”, the policy provides in pertinent part: 
BUSINESS AUTO COVERAGE FORM
 
A. Any person or organization whom you are required by
contract to name as additional insured is an “insured” for
LIABILITY COVERAGE but only to the extent that person
or organization qualifies as a “insured” under the WHO IS
AN INSURED provision of Section II-LIABILITY
COVERAGE. 
 
(Emphasis added).
 
          Section II, subsection A(1) of the policy entitled “WHO IS AN INSURED”
defines an “insured” as: 
a. You for any covered “auto”.
b. Anyone else while using with your permission a covered
“auto” you own, hire, or borrow . . . .
c. Anyone liable for the conduct of an “insured” described
above but only to the extent of that liability. 
 
          Here, although AccuFleet was required by contract to name Continental as an
additional insured under the policy, under the facts as alleged in Escobar’s pleading,
Continental does not qualify for liability coverage because it does not meet the
definition of an “insured” under the express terms of Section II of the policy. 
Continental cannot satisfy subsection A(1)(a) because it is not included in the
definition of “You” contained in the policy.


 Second, Continental does not qualify for
liability coverage as an “insured” under subsection A(1)(b) because there is no
allegation in Escobar’s lawsuit that the accident involved Continental’s use of any
covered automobile that was owned, hired or borrowed by AccuFleet. Instead, the
pleadings allege that Continental was using its own vehicle in a manner that caused
Escobar’s injuries. 
          Third, Continental does not qualify for liability coverage under subsection
A(1)(c) because there is no allegation in Escobar’s pleading that Continental was
liable for AccuFleet’s alleged conduct, if any, that was involved in the accident.
Because, under the facts alleged in Escobar’s pleading, Continental did not meet any
of the criteria to be considered an “insured” under the policy, Hartford did not owe a
duty to defend Continental in the Escobar lawsuit. Accordingly, we hold that the trial
court did not err in granting Hartford’s motion for summary judgment regarding
Continental’s breach of contract claims. 
AccuFleet
          In contrast, Escobar’s allegations are sufficient to state causes of action against
AccuFleet that are within the coverage of the Hartford Policy, and Hartford therefore
owed AccuFleet a duty to defend in the Escobar lawsuit. The Hartford Policy provides
coverage for “all sums an ‘insured’ legally must pay as damages because of ‘bodily
injury’ . . . caused by an ‘accident’ and resulting from the ownership, maintenance or
use of a covered ‘auto.’” (emphasis added). Here, Escobar alleges facts showing that
his injuries were caused by an accident and resulting from the use of a covered auto. 
Escobar further alleges that both AccuFleet and Continental “negligently, carelessly,
and recklessly operated” their respective vehicles so as to cause the collision. Id. 
Escobar alleges that as a result of the negligence of both AccuFleet and Continental
and their respective drivers, he sustained serious and permanent personal injuries.



           It is undisputed that AccuFleet is a named “insured” under the policy and that
the vehicle driven by AccuFleet’s employee was a “covered auto” under the terms of
the policy. Accordingly, we hold that Escobar’s lawsuit makes claims for “bodily
injury” caused by an accident, and resulting from the ownership, maintenance or use
of a “covered ‘auto’ as required for coverage under the terms of the policy. Thus, the
pleadings, considered in light of the policy provisions, without regard to the truth or
falsity of Escobar’s allegations, invoke Hartford’s obligation to defend. See
GuideOne, 197 S.W.3d at 308.
E. Hartford’s Defenses to AccuFleet’s Breach of Contract Claims
 Was the Operation of a Vehicle that is not Covered Under the Policy the Sole
Cause of the Accident?
 
          Hartford argues that it has no duty to defend because the accident “undisputedly
resulted from” Continental’s negligent use of a ground tug that was excluded from
coverage under the policy and not the use of AccuFleet’s vehicle. Hartford contends
that we must consider extrinsic evidence to determine whether the accident only
“resulted from” Continental’s use of the tug or, as plead by Escobar, the accident
resulted from the use of both the tug and AccuFleet’s vehicle. Specifically, Hartford
argues that we must disregard Escobar’s express pleadings that his injuries were
caused by the conduct of both the driver of the Continental tug and the driver of 
AccuFleet’s automobile and look to the deposition testimony of the Continental tug
driver, correspondence from AccuFleet’s attorney to Hartford and to Escobar’s
attorney, and AccuFleet’s pleadings in the instant case to determine whether a duty to
defend was triggered by Escobar’s lawsuit.
          We decline to create an exception to the eight corners rule under the facts of this
case and consider this extrinsic evidence to determine the existence of a duty to
defend. The Texas Supreme Court has not recognized such an exception to the eight-corners rule. To the contrary, in cases in which the Texas Supreme Court has been
asked to acknowledge exceptions to the rule, it has declined to do so. See, e.g., Pine
Oak Builders, Inc. v. Great Am. Lloyds Ins. Co., 279 S.W.3d 650, 654 (Tex. 2009) (“In
deciding the duty to defend, the court should not consider extrinsic evidence from
either the insurer or the insured that contradicts the allegations of the underlying
petition.”); Zurich Am., 268 S.W.3d at 497 (“[W]hile Maryland has recognized
exceptions, in some limited circumstances, to the eight-corners rule, Texas has not.”);
see also D.R. Horton-Tex., Ltd. v. Markel Int’l Ins. Co., 2006 WL 3040756, *5 (Tex.
App.—Houston [14th Dist.] Oct. 26, 2006, pet. denied) (“We recognize that some state
and federal courts interpret Texas law to permit a court to consider extrinsic evidence
in determining whether a petition states a covered claim. To date, however, the Texas
Supreme Court has not recognized such an exception.”); Tri-Coastal Contractors, Inc.
v. Hartford Underwriters Ins. Co., 981 S.W.2d 861, 863 (Tex. App.—Houston [1st
Dist.] 1999, pet. denied) (acknowledging the few Texas court of appeals cases that
have allowed the use of extrinsic evidence to disprove coverage, but declining to
create an exception to the eight-corners rule).
 Is There a Causal Nexus Between Escobar’s Injury
 and the Use of a “Covered Auto?”
 
          Next, Hartford argues that it has no duty to defend AccuFleet because the
“causal nexus” between Escobar’s injury and the AccuFleet employee’s use of the
covered auto is insufficient to trigger coverage. We disagree. The Texas Supreme
Court has held that, in determining whether there is a sufficient causal nexus between
a vehicle and alleged injury for coverage, “the use required is of the vehicle qua
vehicle, rather than simply as an article of property.” Mid-Century Ins. Co. v. Lindsey,
997 S.W.2d 153, 156 (Tex. 1999). The Court noted that it regards the following
factors, drawn from “[t]wo well-established treatises on insurance law,” as helpful in
analyzing the issue: 
For an injury to fall within the “use” coverage of an automobile policy
(1) the accident must have arisen out of the inherent nature of the
automobile, as such, (2) the accident must have arisen within the natural
territorial limits of an automobile, and the actual use must not have
terminated, (3) the automobile must not merely contribute to cause the
condition which produces the injury, but must itself produce the injury. 

 
Id. at 157.
 
          In this case, Escobar alleges that he was injured as the result of a rear-end
accident involving a covered auto and a ground tug that occurred while Escobar was
traveling inside of the covered auto on the tarmac of the Newark airport. Escobar’s
petition specifically pleads that the accident and his injury were caused not only by
Continental’s operation of the ground tug but also by AccuFleet’s negligent, careless,
and reckless operation of the covered auto at the Newark airport. Accordingly, we
hold that there is a sufficient causal nexus between AccuFleet’s vehicle and Escobar’s
injury to trigger Hartford’s duty to defend AccuFleet in the Escobar lawsuit.
          Hartford’s reliance on the holding in National Union Fire Insurance Company
of Pittsburgh, PA v. Merchants Fast Motor Lines, Inc., 939 S.W.2d 139, 140–41 (Tex.
1997), to support its argument that there is no “causal nexus” between Escobar’s
injury and AccuFleet’s use of the covered auto as alleged in Escobar’s pleadings is
misplaced. In Merchants Fast Motor Lines, the court addressed whether the insured’s
allegedly negligent discharge of a gun, killing a passenger in another vehicle, triggered
a duty to defend under the truck owner’s vehicle liability policy. Id. at 141. The
Texas Supreme Court found there was no causal nexus between the injury sustained
and the driver’s use of his auto, where the plaintiff failed to allege “even a remote
causal relationship” between the use of the covered auto and the shooting. Id. As the
Court held, the “mere fact that an automobile is the situs of [an] accident is not enough
to establish the necessary nexus between the use and the accident to warrant the
conclusion that the accident resulted from such use.” Id. at 142 (citations omitted). 
By contrast, in the instant case, Escobar’s pleading specifically states that the accident
and his injuries were caused not only by Continental’s operation of the ground tug but
also by AccuFleet’s negligent, careless, and reckless operation of the covered auto at
the airport. Thus, unlike the covered automobile in Merchants Fast Motor Lines, the
AccuFleet vehicle covered under the Hartford policy was not merely the situs of the
accident. 
          Similarly, Hartford’s reliance on the holding in State and County Mutual Fire
Insurance Company v. Trinity Universal Insurance Companies, 35 S.W.3d 278, 282
(Tex. App.—El Paso 2000, no pet.) to support its argument that there is no causal
nexus is also misplaced. In State and County Mutual Fire Insurance Company, the
court held that allegations that a plaintiff was struck by an unrelated third-party
vehicle while fleeing a stopped covered vehicle did not invoke a duty to defend under
an automobile policy. As the court noted, under the facts alleged in the petition, the
plaintiff “was not struck by or pushed from the [covered] vehicle, she did not fall from
it, and she was not injured in it.” Id. at 282. By contrast, in this case, Escobar’s
pleading alleges that he was not only injured while riding as a passenger inside of an
automobile covered by the policy at issue but it was in operation at the time of the
accident.
Does the Policy’s “Mechanical Device” Exclusion Apply to Escobar’s Claims?
           Hartford also argues that it owed no duty to defend either Continental or
AccuFleet because the mechanical device exclusion in the policy applies. This
exclusion provides, in pertinent part, that “[t]his insurance does not apply to . . .
‘[b]odily injury’ or ‘property damage’ resulting from the movement of property by a
mechanical device (other than a hand truck) unless the device is attached to the
covered ‘auto.’” Specifically, Hartford asserts the Escobar accident “clearly resulted
from the use of a mechanical device [ground tug] that was transporting property (i.e.,
luggage stacked on the luggage cart.)” 
          Even assuming, arguendo, that Hartford is correct in asserting that the ground
tug is a mechanical device subject to the exclusion, Escobar’s pleading does not 
allege only that he was injured because of the operation of a ground tug. The pleading
also alleges that Escobar sustained personal injuries because of the negligent, careless,
and reckless use by an AccuFleet employee of an auto owned by AccuFleet, a claim
that, if true, may be covered. These facts alleged in the pleading do not clearly place
this case outside of the coverage of the policy. Thus, Hartford had a duty to defend
the entire suit as to AccuFleet. Zurich Am., 268 S.W.3d at 491.
Was AccuFleet Named in the Escobar Lawsuit For Discovery Purposes Only?
          Hartford argues that, even if Escobar’s injuries were the result of the use of
AccuFleet’s covered vehicle, it still does not owe a duty to defend AccuFleet because
AccuFleet is a defendant in the lawsuit for discovery purposes only. This argument
ignores the entirety of Escobar’s pleading in this case. Although Escobar states in the
second count of his pleading that AccuFleet is a named defendant for discovery
purposes only and “no claim for monetary damages is being asserted at this time,” he
also clearly states in each of his five counts, including count two, that he seeks to hold
AccuFleet liable for damages and recover those damages from AccuFleet.


 We hold
that this pleading is sufficient to trigger Accufleet’s duty to defend AccuFleet in the
Escobar lawsuit. See Heyden Newport Chem. Corp. v. S. Gen. Ins. Co., 387 S.W.2d
at 26 (“Where the complaint does not state facts sufficient to clearly bring the case
within or without the coverage, the general rule is that the insurer is obligated to
defend if there is, potentially, a case under the complaint within the coverage of the
policy.”).
Does Hartford’s Duty to Defend Cover Voluntary Settlement Payments?
 
          Finally, in a sub-argument, Hartford argues that summary judgment in its favor
should be affirmed because any money AccuFleet paid to settle Escobar’s claims on
behalf of Continental amounts only to an excluded voluntary payment, rather than
damages AccuFleet was obligated to pay. Hartford argues that, as a matter of law, it
is not obligated to provide a duty to defend under these circumstances. However,
Hartford did not move for summary judgment on this ground. The trial court’s
summary judgment may be affirmed only on a ground expressly stated in Hartford’s
motion. See Tex. R. Civ. P. 166a(c); Stiles v. Resolution Trust Corp., 867 S.W.2d 24,
26 (Tex. 1993). Because Hartford did not move for summary judgment on the ground
that AccuFleet’s settlement of the Escobar lawsuit was an excluded voluntary
payment, Hartford’s argument is not properly before this court. Id. 
Under the Terms of the Policy, Does Hartford Owe Continental 
a Duty to Indemnify?
 
          In its second issue, AccuFleet argues that the trial court erred in finding that
Hartford was not required to indemnify Continental for the payments Continental
made to settle the Escobar lawsuit. However, as we held above, under the facts
alleged in the Escobar pleading, Continental does not qualify for coverage under
AccuFleet’s policy. Accordingly, we hold that Hartford is not required to indemnify
Continental for payments made to settle the Escobar lawsuit and the trial court did
not err in granting summary judgment on Continental’s breach of contract claim in
favor of Hartford on this basis.  
Conclusion
          For the foregoing reasons, we affirm the judgment of the trial court in favor of
Hartford regarding Hartford’s duty to defend and indemnify Continental. We reverse
the judgment of the trial court in favor of Hartford regarding Hartford’s duty to defend
AccuFleet and remand this case for further proceedings consistent with this opinion.
                                                    
 
 
 
 
                                                             George C. Hanks, Jr.
                                                             Justice
 
Panel consists of Justices Keyes, Hanks, and Bland.