**STATE AND COUNTY MUTUAL FIRE INSURANCE COMPANY, Appellant,**

v.

**TRINITY UNIVERSAL INSURANCE COMPANIES, Appellee.**

**No. 08–00–00035–CV.**

Court of Appeals of Texas, El Paso.

Dec. 28, 2000.

Leslie Echols Pitts, Steven R. Shattuck, Fanning, Harper & Martinson, Dallas, for appellant.

David J. Schubert, William Wayne Speed, Arter & Hadden, L.L.P., Jenna Denise Beller, Dallas, for appellee.

Before BARAJAS, C.J., McCLURE, and CHEW, JJ.

## OPINION

BARAJAS, Chief Justice.

This is an appeal from the granting of summary judgment in an insurance coverage dispute. For the reasons stated, we reverse and remand.

## I. SUMMARY OF THE EVIDENCE

### A. Underlying Lawsuit

Billy Ray Evans filed a wrongful death and survival suit individually and on behalf of the Estate and Statutory Beneficiaries of Shirley Cox Evans, Deceased, (collectively "Plaintiffs") against Raudin McCormick ("Raudin") and Mildred Riggs ("Riggs"). The suit arose out of fatal injuries sustained by Shirley Cox Evans on October 20, 1993, when she was hit by a car on Interstate 35, Tarrant County, Texas, as she was attempting to escape from a Raudin owned vehicle driven by Don Melton Laird, Jr. ("Laird"). Ms. Evans had car trouble and stopped her vehicle on Interstate 35. Laird, a "railroad taxi" driver for Raudin, stopped the van and gave Ms. Evans a ride. Laird then attempted to sexually assault Ms. Evans. Ms. Evans jumped out of the van to escape the assault and was struck by an oncoming car.

Plaintiffs asserted various causes of action against Raudin, who was insured by Appellant, State and County Mutual Fire Insurance Company, and Appellee, Trinity Universal Insurance Companies. Raudin had a business auto policy with Appellant and a commercial general liability policy with Appellee. Raudin notified Appellant and Appellee of the lawsuit and requested a defense and coverage under both policies. Both parties contended that the other owed a duty to defend the lawsuit and to provide coverage for any damages recovered by Plaintiffs. Nonetheless, Appellant and Appellee entered into a written agreement to jointly fund the defense, while reserving for later the resolution of the coverage dispute between them.

## B. Procedural Background of Coverage Dispute

Appellant filed this lawsuit against Appellee seeking a declaration that it did not have a duty to defend. Appellee filed a counterclaim seeking a declaration that it did not have a duty to defend. Both parties filed motions for summary judgment. After a hearing, the trial court granted Appellee's motion, thereby denying Appellant's motion. This appeal follows.

## II. DISCUSSION

### A. Summary Judgment Standard of Review

The standard of review on appeal is whether the successful movant at the trial level carried its burden of showing that there is no genuine issue of material fact and that a judgment should be granted as a matter of law. *See Lear Siegler, Inc. v. Perez*, 819 S.W.2d 470, 471 (Tex.1991); *Nixon v. Mr. Property Management Co.*, 690 S.W.2d 546, 548 (Tex.1985); *Cortez v. Liberty Mut. Fire Ins. Co.*, 885 S.W.2d 466, 469 (Tex.App.—El Paso 1994, writ denied). Thus, the question on appeal is not whether the summary judgment proof raises fact issues as to required elements of the movant's cause or claim, but whether the summary judgment proof establishes, as a matter of law, that there is no genuine issue of material fact as to one or more elements of the movant's cause or claim. *See Gibbs v. General Motors*, 450 S.W.2d 827, 828 (Tex.1970).

In resolving the issue of whether the movant has carried this burden, all evidence favorable to the non-movant must be taken as true and all reasonable inferences, including any doubts, must be resolved in the non-movant's favor. *See Nixon*, 690 S.W.2d at 548–49; *DeLuna v. Guynes Printing Co.*, 884 S.W.2d 206, 208 (Tex.App.—El Paso 1994, writ denied). Where the defendants are the movants and they submit summary evidence disproving at least one essential element of each of plaintiff's causes of action, then summary judgment should be granted. *See Perez*, 819 S.W.2d at 471; *Bradley v. Quality Serv. Tank Lines*, 659 S.W.2d 33, 34 (Tex. 1983); *Cortez*, 885 S.W.2d at 469. Furthermore, when a trial court's order granting summary judgment does not specify the ground or grounds relied on for the ruling, summary judgment will be affirmed on appeal if any of the theories advanced are meritorious. *See State Farm Fire & Cas. Co. v. S.S.*, 858 S.W.2d 374, 380 (Tex. 1993); *Rogers v. Ricane Enter. Inc.*, 772 S.W.2d 76, 79 (Tex.1989).

### B. "Use" under the Policy

In Issue No. One, Appellant argues that the trial court erred in granting summary judgment for Appellee because the allegations asserted in the underlying lawsuit do not involve a "use" as contemplated by the policy language under Texas law.

Raudin's Business Auto Policy ("Auto Policy") issued by Appellant provided the following:

A. COVERAGE

We will pay all sums an insured legally must pay as damages because of bodily injury or property damage to which this insurance applies, caused by an accident and resulting from the ownership; [sic] maintenance or use of a covered auto.

We have the right and duty to defend any suit asking for these damages. However, we have no duty to defend suits for bodily injury or property damage not covered by this Coverage Form. We may investigate and settle any claim or suit as we consider appropriate. Our duty to defend or settle ends when the Liability Coverage Limit of Insurance has been exhausted by payment of judgments or settlements.

Raudin's Commercial General Liability Policy ("CGL Policy") with Appellee provided the following liability coverage:

1. Insuring Agreement

a. We will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or

'property damage' to which this insurance applies. We will have the right and duty to defend any 'suit' seeking those damages. We may at our discretion investigate any 'occurrence' and settle any claim or 'suit' that may result. . . .

Raudin's CGL Policy included the following exclusion:

g. 'Bodily injury' or 'property damage' arising out of the ownership, maintenance, use or entrustment to others of any aircraft, 'auto' or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and 'loading and unloading.'

"Loading or unloading" is defined as:

the handling of property:

a. After it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft or 'auto;'

b. While it is in or on an aircraft, watercraft or 'auto;' or

c. While it is being moved from an aircraft, watercraft or 'auto' to the place where it is finally delivered;

but 'loading or unloading' does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft or 'auto.'

■ Appellant argues that the only Texas case cited by Appellee in support of its motion for summary judgment, *Collier v. Employers Nat'l Ins. Co.*, 861 S.W.2d 286 (Tex.App.—Houston [14th Dist.] 1993, writ denied), does not support its position. In *Collier*, the plaintiff-driver was injured when an unidentified passing car fired a shotgun into the vehicle he was driving. *See id.* at 288. The plaintiff sought to recover under the uninsured motorist provision of the policy. *See id.* The court was faced with the question of how broadly the word "use" should be defined and adopted the following three-prong test for construing the "use" requirement of uninsured motorist coverage:

1. The accident must have arisen out of the inherent nature of the automobile, as such;

2. The accident must have arisen within the natural territorial limits of [the] automobile, and the actual use, loading, or unloading must not have terminated; and

3. The automobile must not merely contribute to the cause of the condition which produces the injury, but must itself produce the injury.

*Id.* at 288–89 (citing 6B JOHN A. APPLEMAN, INSURANCE LAW AND PRACTICE (Buckley ed.) § 4317 (1979)). Appellant argues that the fatal injuries sustained by Ms. Evans did not arise out of the inherent nature of the covered vehicle, as a vehicle, and thus neither arose out of nor resulted from its "use" under the policies. Appellant maintains that the uncontroverted summary judgment evidence established that Ms. Evans was not injured by the Raudin vehicle in any way. She was not struck by or pushed from the Raudin vehicle, she did not fall from it, and she was not injured in it. Appellant insists that because Ms. Evans was struck by an unrelated, third-party vehicle while fleeing Raudin's stopped van to escape a criminal assault, the *Collier* test is not satisfied and the trial court erred in so holding.

Appellee argues that the *Collier* test is satisfied. With regard to the first prong, Appellee maintains that the accident arose out of the use of the vehicle as a vehicle because, but for the vehicle and its position on the highway, Ms. Evans would not have died from being struck by the highway traffic. Unlike the shooting situation in *Collier*, Appellee argues that Ms. Evans could not have just as easily been run over had she not been being transported in the Raudin van. With regard to the second prong, Appellee argues that Ms. Evans died on a roadway, which is unmistakably within the natural territory of the vehicle. Finally, Appellee contends that the third prong is met because it was Ms. Evans's panicked exodus from the van into the

path of traffic that caused her death. Appellee argues that Ms. Evans was only in that dangerous location at the moment of exodus because the van was being used to transport her on the busy freeway, rather than being used merely as the situs or enclosure for her assault. Appellee maintains that the Raudin van, as a vehicle, was an integral element of the events leading to Ms. Evans's death.

Both parties also direct our attention to a recent Texas Supreme Court case in which the issue of when an injury "arises out of" or "results from" the "use" of an automobile is addressed. *See Mid–Century Ins. Co. v. Lindsey,* 997 S.W.2d 153 (Tex.1999). In *Lindsey,* a bystander was injured when a shotgun sitting on a gun rack in a truck discharged. *See id.* at 154. The child of the truck's owner attempted to enter through the sliding rear window and accidentally touched the loaded shotgun, causing it to discharge. *See id.* The Court found that Lindsey's injuries were "caused by an accident" within the meaning of the policy. *See id.* at 156. The Court considered the *Collier* test and stated that its "factors, though unavoidably abstract, are helpful in focusing the analysis. . . ." *Id.* at 157. The Court noted that it did not view the factors as an absolute test, but in applying the factors, it concluded that Lindsey's injuries arose out of the use of the truck as a matter of law. *See id.* at 157–58. The Court noted that this was a "close case" but that "on balance" the truck "produced" the injury. *See id.* at 159. The Court went on to state that "the truck was not merely the situs of activity, unrelated to any use of the truck that resulted in the accident." *Id.* The Court also noted that its decision was consistent with the majority of decisions in other jurisdictions in similar cases. *See id.* and n. 23, n. 25, and n. 26.

Considering the *Lindsey* analysis, Appellant argues that nothing in, on, or associated with the Raudin vehicle is alleged to have produced Ms. Evans's injuries. Rather, it was her location in traffic as a pedestrian, not as a passenger in or exiting Raudin's van, that resulted in her death. Thus, Appellant maintains that any "use" of the Raudin vehicle by Laird, as a vehicle, was at best incidental to the injury. On the contrary, Appellee argues that the *Lindsey* analysis results in the conclusion that Ms. Evans's death both "arose out of" and "resulted from" the use of the van by Laird. Appellee alleged that but for the use of the van by Laird, Ms. Evans would not have been killed.

In considering the evidence, applying the *Lindsey* analysis, and using the *Collier* factors as a guiding reference, we find that the trial court erred in holding that the damages alleged in the underlying suit triggered coverage under Appellant's Auto Policy and excluded coverage under Appellee's CGL Policy. We agree that the accident arose out of the use of the vehicle as a vehicle because, but for the vehicle and its position on the highway, Ms. Evans would not have died from being struck by the highway traffic. We also agree that Ms. Evans died on a roadway, which under the circumstances of this case, is unmistakably within the natural territory of the vehicle. However, the third prong of *Collier* is difficult to overcome. We agree with Appellant that the use of the Raudin van was merely incidental in producing Ms. Evans's death, and that it did not itself produce the injury. *See Collier,* 861 S.W.2d at 289. The uncontroverted summary judgment evidence established that Ms. Evans was not struck by or pushed from the Raudin vehicle, she did not fall from it, and she was not injured in it. As tragic as the instant case is, because Ms. Evans was struck by an unrelated, third-party vehicle while fleeing Raudin's stopped van to escape a criminal assault, the third prong of the *Collier* test is not satisfied. Issue No. One is sustained.

In Issue No. Two, Appellant argues that the trial court erred in granting summary judgment for Appellee on Appellant's coverage obligations under the auto policy because Appellee's Motion for Summary

Judgment was not dispositive on the issue of whether Plaintiffs' damages in the underlying lawsuit resulted from the "use" of Raudin's vehicle. This issue was not raised in Appellant's Motion for Summary Judgment nor in its Response to Appellee's Motion for Summary Judgment. Because it is raised for the first time on appeal, we overrule Issue No. Two. *See* TEX.R.APP.P. 33.1.

Having sustained Issue No. One, we reverse the trial court's judgment and remand this matter to the trial court for proceedings not inconsistent with this opinion.