**ACCUFLEET, INC., Appellants,**

v.

**HARTFORD FIRE INSURANCE COMPANY, Appellee.**

**No. 01–08–00684–CV.**

Court of Appeals of Texas, Houston (1st Dist.).

Sept. 17, 2009.

Rehearing Overruled Feb. 18 and March 9, 2010.

266

Karen B. Jewell, Lawrence J. Fossi, Fossi & Jewell LLP, Houston, TX, for Appellants.

Christine Kirchner, Steven J. Knight, Chamberlain, Hrdlicka, White, Williams & Martin, Houston, TX, for Appellee.

Panel consists of Justices KEYES, HANKS, and BLAND.

## OPINION

GEORGE C. HANKS, JR., Justice.

In this insurance coverage dispute, AccuFleet, Inc. ("AccuFleet") appeals from the trial court's granting summary judgment in favor of Hartford Fire Insurance Company ("Hartford"), and denying AccuFleet's cross-motion for summary judgment. In two issues, AccuFleet argues that Hartford breached the insurance policy by failing to (1) defend AccuFleet and Continental Airlines, Inc. ("Continental"), an additional insured under the policy, and

(2) indemnify Continental. We affirm the judgment of the trial court regarding Hartford's duty to defend and indemnify Continental. We reverse the judgment of the trial court regarding Hartford's duty to defend AccuFleet.

### Factual and Procedural Background

AccuFleet is an aviation support business that contracts with airline carriers to provide various support services, including cleaning aircraft interiors and exteriors at airports. AccuFleet entered into a contract with Continental to provide ground support services to Continental at Newark International Airport. This services contract required AccuFleet to obtain and maintain insurance coverage, including automobile liability insurance and airport owners' and operators' general liability insurance. The contract also required that Continental be named as an additional insured under AccuFleet's policies and that the insurance provided for Continental be primary, without the right of contribution from any insurance policy carried by Continental.

In January 2003, a ground tug—transporting luggage and driven by a Continental baggage handler—rear-ended an AccuFleet vehicle stopped at a stop sign on the tarmac. Gonzalo Escobar ("Escobar"), an AccuFleet employee, was a passenger in the AccuFleet vehicle and allegedly was injured in the collision. Escobar sued both AccuFleet and Continental in New Jersey state court for back injuries allegedly caused by the collision.

The AccuFleet vehicle involved in the collision was covered by an automobile insurance policy issued by Hartford to AccuFleet. Both Continental and AccuFleet made a written request to Hartford that it defend and indemnify Continental and AccuFleet in the Escobar lawsuit. Continental's demand was based on the claim that Continental was "an additional insured" under the policy. Hartford did not respond to either of these demands.

Subsequently, Continental paid Escobar $250,000 to settle the lawsuit. Continental made a demand to Hartford to be indemnified for the settlement amount. Hartford refused this demand. AccuFleet agreed to pay Continental a percentage of Continental's attorneys' fees in the Escobar lawsuit and the amount Continental paid to Escobar in settlement, and it took an assignment of Continental's claims against Hartford.

AccuFleet filed this suit against Hartford, claiming breach of contract, violation of the duty of good faith and fair dealing, and violations of the Texas Insurance Code.[1] The trial court severed and abated AccuFleet's extra-contractual claims against Hartford, leaving only AccuFleet's breach of contract claims, brought on its own behalf and on behalf of Continental, against Hartford. In these claims, AccuFleet contends that Hartford unlawfully refused to defend Continental and AccuFleet in the Escobar lawsuit and failed to indemnify Continental for amounts paid in settlement of the Escobar lawsuit.

Hartford moved for summary judgment on AccuFleet's breach of contract claims and AccuFleet filed its own cross-motion for summary judgment against Hartford on Hartford's liability for breach of contract. The trial court entered final judgment granting Hartford's motion for summary judgment and denying AccuFleet's motion for summary judgment. AccuFleet filed the instant appeal.

---

1. AccuFleet also sued its insurance agent, AON Risk Services of Texas, but those claims were settled before the trial court entered a final judgment in this case.

## Summary Judgment Standard of Review

To prevail on a summary judgment motion, a movant has the burden of proving that it is entitled to judgment as a matter of law and that there is no genuine issue of material fact. Tex.R. Civ. P. 166a(c); *Cathey v. Booth*, 900 S.W.2d 339, 341 (Tex.1995). A plaintiff moving for summary judgment on its claim must establish its right to summary judgment by conclusively proving all the elements of its cause of action as a matter of law. *Rhone–Poulenc, Inc. v. Steel*, 997 S.W.2d 217, 223 (Tex.1999); *Anglo–Dutch Petroleum Int'l, Inc. v. Haskell*, 193 S.W.3d 87, 95 (Tex.App.-Houston [1st Dist.] 2006, pet. denied). When a defendant moves for summary judgment, it must either (1) disprove at least one essential element of the plaintiff's cause of action or (2) plead and conclusively establish each essential element of its affirmative defense, thereby defeating the plaintiff's cause of action. *Cathey*, 900 S.W.2d at 341; *Yazdchi v. Bank One, Tex., N.A.*, 177 S.W.3d 399, 404 (Tex.App.-Houston [1st Dist.] 2005, pet. denied). When both parties move for summary judgment and the trial court grants one motion and denies the other, the reviewing court should review the summary judgment evidence presented by both sides and determine all questions presented and render the judgment that the trial court should have rendered. *Tex. Workers' Comp. Comm'n v. Patient Advocates of Tex.*, 136 S.W.3d 643, 648 (Tex.2004).

## Discussion

In its first issue, AccuFleet contends that the trial court erred in granting Hartford's motion for summary judgment on AccuFleet's breach of contract claims because AccuFleet has established as a matter of law that Hartford breached the terms of AccuFleet's automobile policy by refusing to provide a defense to Continental and AccuFleet in the Escobar lawsuit. In its second issue, AccuFleet contends that the trial court erred in granting Hartford's motion because AccuFleet has established as a matter of law that Hartford breached the terms of the policy by refusing to indemnify Continental for the amounts it paid in settlement of the Escobar lawsuit. (Appellant's Brief at 18). We address each of these arguments below.

## Under the Terms of the Policy, Did Hartford Owe Both Continental and AccuFleet a Duty to Defend?

### A. Law Concerning the Interpretation of Insurance Policies

The plain language of an insurance policy, like that of any other contract, must be given effect when the parties' intent may be discerned from the plain language. *Utica Nat'l Ins. Co. of Tex. v. Am. Indem. Co.*, 141 S.W.3d 198, 202 (Tex. 2004). If the policy language has only one reasonable interpretation, then it is not ambiguous, and we construe it as a matter of law. *Fiess v. State Farm Lloyds*, 202 S.W.3d 744, 746 (Tex.2006); *Am. Mfrs. Mut. Ins. Co. v. Schaefer*, 124 S.W.3d 154, 157 (Tex.2003). If the contract is susceptible to two or more reasonable interpretations, then it is ambiguous and we must resolve the uncertainty by adopting a construction that favors the insured as long as that construction is not unreasonable. *Fiess*, 202 S.W.3d at 746 (citing *Nat'l Union Fire Ins. Co. v. Hudson Energy Co.*, 811 S.W.2d 552, 555 (Tex.1991)). "When interpreting an insurance contract, we 'must adopt the construction of an exclusionary clause urged by the insured as long as that construction is not unreasonable, even if the construction urged by the insurer appears to be more reasonable or a more accurate reflection of the parties' intent.'" *Evanston Ins. Co. v. ATOFINA*

*Petrochems., Inc.,* 51 Tex. Sup.Ct. J. 460, 2008 WL 400394, at *5 (Tex. Feb. 15, 2008) (quoting *Nat'l Union Fire Ins. Co.,* 811 S.W.2d at 555). "'Exceptions or limitations on liability are strictly construed against the insurer and in favor of the insured,' and '[a]n intent to exclude coverage must be expressed in clear and unambiguous language.'" *Id.* (quoting *Nat'l Union Fire Ins. Co.,* 811 S.W.2d at 555).

## B. Duty to Defend

 The duty to defend is distinct from, and broader than, the duty to indemnify. *Zurich Am. Ins. Co. v. Nokia, Inc.,* 268 S.W.3d 487, 491 (Tex.2008). An insurer must defend its insured if a plaintiff's factual allegations potentially support a covered claim, while the facts actually established in the underlying suit determine whether the insurer must indemnify its insured. *GuideOne Elite Ins. Co. v. Fielder Rd. Baptist Church,* 197 S.W.3d 305, 310 (Tex.2006). Thus, an insurer may have a duty to defend but, eventually, no obligation to indemnify. *Farmers Tex. County Mut. Ins. Co. v. Griffin,* 955 S.W.2d 81, 82 (Tex.1997).

 In determining a duty to defend, we follow the eight-corners rule, also known as the complaint-allegation rule: "an insurer's duty to defend is determined by the third-party plaintiff's pleadings, considered in light of the policy provisions, without regard to the truth or falsity of those allegations." *GuideOne,* 197 S.W.3d at 308. Thus, "[e]ven if the allegations are groundless, false, or fraudulent, the insurer is obligated to defend." *Zurich Am.,* 268 S.W.3d at 491. We resolve all doubts regarding the duty to defend in favor of the duty. *King v. Dallas Fire Ins. Co. v. Merchs. Fast Motor Lines, Inc.,* 85 S.W.3d 185, 187 (Tex.2002). "Where the complaint does not state facts sufficient to clearly bring the case within or without the coverage, the general rule is that the insurer is obligated to defend if there is, potentially, a case under the complaint within the coverage of the policy." *Heyden Newport Chem. Corp. v. S. Gen. Ins. Co.,* 387 S.W.2d 22, 26 (Tex.1965); *see also Gore Design Completions, Ltd. v. Hartford Fire Ins. Co.,* 538 F.3d 365, 368 (5th Cir. 2008) (noting that "[t]he rule is very favorable to insureds because doubts are resolved in the insured's favor"). The duty to defend is not impacted by facts ascertained before suit, developed in the course of litigation, or by the ultimate outcome of the suit. *Trinity Universal Ins. Co. v. Cowan,* 945 S.W.2d 819, 829 (Tex.1997). "If a complaint potentially includes a covered claim, the insurer must defend the entire suit." *Zurich American,* 268 S.W.3d at 491.

## C. The Language of AccuFleet's Policy

With this in mind, we turn to the policy language at issue here. Hartford issued a Special Multi–Flex Policy to AccuFleet, Inc. as its named insured. The policy includes a Business Auto Coverage Form, providing for liability coverage for damages the insured or some third parties must pay because of bodily injury resulting from the use of a covered auto. The policy provides the following grant of liability coverage:

> We will pay all sums an "insured" legally must pay as damages because of "bodily injury" or "property damage" to which this insurance applies, caused by an "accident" and resulting from the ownership, maintenance or use of a covered "auto."

The policy defines "auto" as a "land motor vehicle, 'trailer' or semi-trailer designed for travel on public roads." "Auto" does not include "mobile equipment," such as vehicles designed for use principally off public roads. The policy also excludes

coverage for an insured's liability resulting from the insured's use of a "mechanical device."

## D. Escobar's Allegations

In the underlying lawsuit, Escobar alleges that he was a passenger in a vehicle owned by AccuFleet that had stopped at a stop sign on the tarmac of the Newark airport. The vehicle was driven by Luis Hermosa, an AccuFleet employee. Escobar alleges that, while it was stopped at the sign, the AccuFleet vehicle was rear-ended by another vehicle, which was owned by Continental. Escobar further alleges that both AccuFleet and Continental "negligently, carelessly, and recklessly operated" their respective vehicles so as to cause the collision. Escobar alleges that as a result of the negligence of both Accu-Fleet and Continental and their respective drivers, he sustained serious and permanent personal injuries.

## E. Analysis

**Continental**

■■■ We first address whether Continental meets the criteria to be covered under the policy. In this case, it does not and thus Hartford does not owe Continental a duty to defend. Under the facts alleged in Escobar's pleading, Continental does not qualify for liability coverage for damages under AccuFleet's automobile policy. A third party, such as Continental, may be covered under the terms of the policy if AccuFleet is required by contract to name the party as an additional insured. Continental does meet this first requirement. However, the third party is covered only if it *also* meets the definition of an "insured" under the terms outlined in Section II of the policy. Under the endorse-

ment entitled "**ADDITIONAL INSURED AND RIGHTS OF RECOVERY AGAINST OTHERS**", the policy provides in pertinent part:

> **BUSINESS AUTO COVERAGE FORM**
>
> A. Any person or organization whom you are required by contract to name as additional insured is an "insured" for LIABILITY COVERAGE *but only to the extent that person or organization qualifies as a "insured" under the WHO IS AN INSURED provision of Section II–LIABILITY COVERAGE.*

(Emphasis added).

Section II, subsection A(1) of the policy entitled "WHO IS AN INSURED" defines an "insured" as:

> a. You for any covered "auto".
>
> b. Anyone else while using with your permission a covered "auto" you own, hire, or borrow . . . .
>
> c. Anyone liable for the conduct of an "insured" described above but only to the extent of that liability.

Here, although AccuFleet was required by contract to name Continental as an additional insured under the policy, under the facts as alleged in Escobar's pleading, Continental does not qualify for liability coverage because it does not meet the definition of an "insured" under the express terms of Section II of the policy. Continental cannot satisfy subsection A(1)(a) because it is not included in the definition of "You" contained in the policy.[2] Second, Continental does not qualify for liability coverage as an "insured" under subsection A(1)(b) because there is no allegation in Escobar's lawsuit that the accident involved *Continental's* use of any cov-

---

**2.** On page 1, the policy states that "[t]hroughout this policy the words 'you' and 'your' refer to the Named Insured shown in the Declara-

tions." The named insureds are AccuFleet, Inc.; AccuFleet International, Inc.; AccuFleet Testing Services, Inc.; and Sida Systems, Inc.

ered automobile that was owned, hired or borrowed *by AccuFleet.* Instead, the pleadings allege that Continental was using its *own* vehicle in a manner that caused Escobar's injuries.

Third, Continental does not qualify for liability coverage under subsection A(1)(c) because there is no allegation in Escobar's pleading that Continental was liable for AccuFleet's alleged conduct, if any, that was involved in the accident. Because, under the facts alleged in Escobar's pleading, Continental did not meet any of the criteria to be considered an "insured" under the policy, Hartford did not owe a duty to defend Continental in the Escobar lawsuit. Accordingly, we hold that the trial court did not err in granting Hartford's motion for summary judgment regarding Continental's breach of contract claims.

**AccuFleet**

■ In contrast, Escobar's allegations are sufficient to state causes of action against AccuFleet that are within the coverage of the Hartford Policy, and Hartford therefore owed AccuFleet a duty to defend in the Escobar lawsuit. The Hartford Policy provides coverage for "all sums an 'insured' legally must pay as damages be-

cause of 'bodily injury' ... caused by an 'accident' and *resulting from* the ownership, maintenance or *use of a covered 'auto.'*" (emphasis added). Here, Escobar alleges facts showing that his injuries were caused by an accident and resulting from the use of a covered auto. Escobar further alleges that *both* AccuFleet and Continental "negligently, carelessly, and recklessly operated" their respective vehicles so as to cause the collision. *Id.* Escobar alleges that as a result of the negligence of *both AccuFleet and Continental and their respective drivers,* he sustained serious and permanent personal injuries.[3]

It is undisputed that AccuFleet is a named "insured" under the policy and that the vehicle driven by AccuFleet's employee was a "covered auto" under the terms of the policy. Accordingly, we hold that Escobar's lawsuit makes claims for "bodily injury" caused by an accident, and resulting from the ownership, maintenance or use of a "covered 'auto'" as required for coverage under the terms of the policy. Thus, the pleadings, considered in light of the policy provisions, without regard to the truth or falsity of Escobar's allegations,

---

**3.** The petition provides in part:

1. On or about January 26, 2003, plaintiff Gonzalo Escobar was a passenger in a vehicle driven by defendant LUIS O. HERMOSA and owned by defendant ACCUFLEET INTERNATIONAL, which vehicle was stopped at a stop sign in the property commonly known as NEWARK INTERNATIONAL AIRPORT, when said vehicle was struck in the rear of a vehicle operated by defendant JAMES C. LAWRENCE, JR., and owned by defendant CONTINENTAL AIRLINES.

2. At the aforesaid time and place, *defendants aforesaid, so negligently, carelessly and recklessly operated and/or entrusted their respective vehicles so as to cause the subject collision.*

3. *As a direct result of the negligence of the defendants aforesaid,* the plaintiff GONZA-

LO ESCOBAR, was seriously and permanently injured, suffered and in the future will experience great pain and suffering, did and in the future will be required to expend large sums of money for medical care and attention, and have been and will be in the future disabled and prevented from attending to his necessary affairs and business.

6 [sic]. *As a direct and proximate result of the aforesaid negligence of the defendants aforesaid, the plaintiff, GONZALO ESCOBAR, has sustained a personal injury* resulting in one or more of the following:

 a. death;

 b. dismemberment;

 c. significant disfigurement;

 d. displaced fracture;

 e. A permanent injury within a reasonable degree of medical probability.

invoke Hartford's obligation to defend. *See GuideOne*, 197 S.W.3d at 308.

### F. Hartford's Defenses to AccuFleet's Breach of Contract Claims

### Was the Operation of a Vehicle that is not Covered Under the Policy the Sole Cause of the Accident?

Hartford argues that it has no duty to defend because the accident "undisputedly resulted from" Continental's negligent use of a ground tug that was excluded from coverage under the policy and not the use of AccuFleet's vehicle. Hartford contends that we must consider extrinsic evidence to determine whether the accident only "resulted from" Continental's use of the tug or, as plead by Escobar, the accident resulted from the use of both the tug and AccuFleet's vehicle. Specifically, Hartford argues that we must disregard Escobar's express pleadings that his injuries were caused by the conduct of both the driver of the Continental tug and the driver of AccuFleet's automobile and look to the deposition testimony of the Continental tug driver, correspondence from AccuFleet's attorney to Hartford and to Escobar's attorney, and AccuFleet's pleadings in the instant case to determine whether a duty to defend was triggered by Escobar's lawsuit.

 We decline to create an exception to the eight corners rule under the facts of this case and consider this extrinsic evidence to determine the existence of a duty to defend. The Texas Supreme Court has not recognized such an exception to the eight-corners rule. To the contrary, in cases in which the Texas Supreme Court has been asked to acknowledge exceptions to the rule, it has declined to do so. *See, e.g., Pine Oak Builders, Inc. v. Great Am. Lloyds Ins. Co.*, 279 S.W.3d 650, 654 (Tex. 2009) ("In deciding the duty to defend, the court should not consider extrinsic evidence from either the insurer or the insured that contradicts the allegations of the underlying petition."); *Zurich Am.*, 268 S.W.3d at 497 ("[W]hile Maryland has recognized exceptions, in some limited circumstances, to the eight-corners rule, Texas has not."); *see also D.R. Horton–Tex., Ltd. v. Markel Int'l Ins. Co.*, 2006 WL 3040756, *5 (Tex.App.-Houston [14th Dist.] Oct. 26, 2006, pet. denied) ("We recognize that some state and federal courts interpret Texas law to permit a court to consider extrinsic evidence in determining whether a petition states a covered claim. To date, however, the Texas Supreme Court has not recognized such an exception."); *Tri–Coastal Contractors, Inc. v. Hartford Underwriters Ins. Co.*, 981 S.W.2d 861, 863 (Tex.App.-Houston [1st Dist.] 1999, pet. denied) (acknowledging the few Texas court of appeals cases that have allowed the use of extrinsic evidence to disprove coverage, but declining to create an exception to the eight-corners rule).

### Is There a Causal Nexus Between Escobar's Injury and the Use of a "Covered Auto?"

 Next, Hartford argues that it has no duty to defend AccuFleet because the "causal nexus" between Escobar's injury and the AccuFleet employee's use of the covered auto is insufficient to trigger coverage. We disagree. The Texas Supreme Court has held that, in determining whether there is a sufficient causal nexus between a vehicle and alleged injury for coverage, "the use required is of the vehicle *qua* vehicle, rather than simply as an article of property." *Mid–Century Ins. Co. v. Lindsey*, 997 S.W.2d 153, 156 (Tex.1999). The Court noted that it regards the following factors, drawn from "[t]wo well-established treatises on insurance law," as helpful in analyzing the issue:

For an injury to fall within the "use" coverage of an automobile policy (1) the accident must have arisen out of the inherent nature of the automobile, as such, (2) the accident must have arisen within the natural territorial limits of an automobile, and the actual use must not have terminated, (3) the automobile must not merely contribute to cause the condition which produces the injury, but must itself produce the injury.

*Id.* at 157.

In this case, Escobar alleges that he was injured as the result of a rear-end accident involving a covered auto and a ground tug that occurred while Escobar was traveling inside of the covered auto on the tarmac of the Newark airport. Escobar's petition specifically pleads that the accident and his injury were caused not only by Continental's operation of the ground tug but also by AccuFleet's negligent, careless, and reckless operation of the covered auto at the Newark airport. Accordingly, we hold that there is a sufficient causal nexus between AccuFleet's vehicle and Escobar's injury to trigger Hartford's duty to defend AccuFleet in the Escobar lawsuit.

Hartford's reliance on the holding in *National Union Fire Insurance Company of Pittsburgh, PA v. Merchants Fast Motor Lines, Inc.,* 939 S.W.2d 139, 140–41 (Tex.1997), to support its argument that there is no "causal nexus" between Escobar's injury and AccuFleet's use of the covered auto as alleged in Escobar's pleadings is misplaced. In *Merchants Fast Motor Lines,* the court addressed whether the insured's allegedly negligent discharge of a gun, killing a passenger in another vehicle, triggered a duty to defend under the truck owner's vehicle liability policy. *Id.* at 141. The Texas Supreme Court found there was no causal nexus between the injury sustained and the driver's use of his auto, where the plaintiff failed to allege "even a remote causal relationship" between the use of the covered auto and the shooting. *Id.* As the Court held, the "mere fact that an automobile is the situs of [an] accident is not enough to establish the necessary nexus between the use and the accident to warrant the conclusion that the accident resulted from such use." *Id.* at 142 (citations omitted). By contrast, in the instant case, Escobar's pleading specifically states that the accident and his injuries were caused not only by Continental's operation of the ground tug but also by AccuFleet's negligent, careless, and reckless operation of the covered auto at the airport. Thus, unlike the covered automobile in *Merchants Fast Motor Lines,* the AccuFleet vehicle covered under the Hartford policy was not merely the situs of the accident.

Similarly, Hartford's reliance on the holding in *State and County Mutual Fire Insurance Company v. Trinity Universal Insurance Companies,* 35 S.W.3d 278, 282 (Tex.App.-El Paso 2000, no pet.) to support its argument that there is no causal nexus is also misplaced. In *State and County Mutual Fire Insurance Company,* the court held that allegations that a plaintiff was struck by an unrelated third-party vehicle while fleeing a stopped covered vehicle did not invoke a duty to defend under an automobile policy. As the court noted, under the facts alleged in the petition, the plaintiff "was not struck by or pushed from the [covered] vehicle, she did not fall from it, and she was not injured in it." *Id.* at 282. By contrast, in this case, Escobar's pleading alleges that he was not only injured while riding as a passenger inside of an automobile covered by the policy at issue but it was in operation at the time of the accident.

## Does the Policy's "Mechanical Device" Exclusion Apply to Escobar's Claims?

 Hartford also argues that it owed no duty to defend either Continental or

AccuFleet because the mechanical device exclusion in the policy applies. This exclusion provides, in pertinent part, that "[t]his insurance does not apply to ... '[b]odily injury' or 'property damage' resulting from the movement of property by a mechanical device (other than a hand truck) unless the device is attached to the covered 'auto.'" Specifically, Hartford asserts the Escobar accident "clearly resulted from the use of a mechanical device [ground tug] that was transporting property (i.e., luggage stacked on the luggage cart.)"

Even assuming, *arguendo,* that Hartford is correct in asserting that the ground tug is a mechanical device subject to the exclusion, Escobar's pleading does not allege only that he was injured because of the operation of a ground tug. The pleading also alleges that Escobar sustained personal injuries because of the negligent, careless, and reckless use by an AccuFleet employee of an auto owned by AccuFleet, a claim that, if true, may be covered. These facts alleged in the pleading do not clearly place this case outside of the coverage of the policy. Thus, Hartford had a duty to defend the entire suit as to Accu-Fleet. *Zurich Am.,* 268 S.W.3d at 491.

**Was AccuFleet Named in the Escobar Lawsuit For Discovery Purposes Only?**

■■■ Hartford argues that, even if Escobar's injuries were the result of the use of AccuFleet's covered vehicle, it still does not owe a duty to defend AccuFleet because AccuFleet is a defendant in the lawsuit for discovery purposes only. This argument ignores the entirety of Escobar's pleading in this case. Although Escobar states in the second count of his pleading that AccuFleet is a named defendant for discovery purposes only and "no claim for monetary damages is being asserted at this time," he also clearly states in each of his five counts, including count two, that he seeks to hold AccuFleet liable for damages and recover those damages from Ac-cuFleet.[4] We hold that this pleading is sufficient to trigger AccuFleet's duty to defend AccuFleet in the Escobar lawsuit. *See Heyden Newport Chem. Corp. v. S. Gen. Ins. Co.,* 387 S.W.2d at 26 ("Where the complaint does not state facts sufficient to clearly bring the case within or without the coverage, the general rule is that the insurer is obligated to defend if there is, potentially, a case under the complaint within the coverage of the policy.").

**Does Hartford's Duty to Defend Cover Voluntary Settlement Payments?**

■■■ Finally, in a sub-argument, Hartford argues that summary judgment in its favor should be affirmed because any money AccuFleet paid to settle Escobar's claims on behalf of Continental amounts only to an excluded voluntary payment, rather than damages AccuFleet was obligated to pay. Hartford argues that, as a matter of law, it is not obligated to provide a duty to defend under these circumstances. However, Hartford did not move for summary judgment on this ground.

4. At the conclusion of the first and second counts Escobar alleges as follows: "WHEREFORE, plaintiff GONZALO ESCOBAR, demands judgment against the defendants, JAMES C. LAWRENCE JR., CONTINENTAL AIRLINES, LUIS O. HERMOSA, ACCU-FLEET INTERNATIONAL, jointly, severally or in the alternative, for damages, interest and costs of suit, or other relief that the Court deems just."

At the conclusion of the third, fourth and fifth counts Escobar alleges as follows: "WHEREFORE, plaintiff GONZALO ES-COBAR, demands judgment against the defendants, JAMES C. LAWRENCE JR., CONTINENTAL AIRLINES, LUIS O. HER-MOSA, ACCUFLEET INTERNATIONAL, and JOHN DOES 1–100 (names being fictitious) jointly, severally or in the alternative, for damages, interest and costs of suit, or other relief that the Court deems just."

The trial court's summary judgment may be affirmed only on a ground expressly stated in Hartford's motion. *See* Tex.R. Civ. P. 166a(c); *Stiles v. Resolution Trust Corp.*, 867 S.W.2d 24, 26 (Tex.1993). Because Hartford did not move for summary judgment on the ground that AccuFleet's settlement of the Escobar lawsuit was an excluded voluntary payment, Hartford's argument is not properly before this court. *Id.*

### Under the Terms of the Policy, Does Hartford Owe Continental a Duty to Indemnify?

In its second issue, AccuFleet argues that the trial court erred in finding that Hartford was not required to indemnify Continental for the payments Continental made to settle the Escobar lawsuit. However, as we held above, under the facts alleged in the Escobar pleading, Continental does not qualify for coverage under AccuFleet's policy. Accordingly, we hold that Hartford is not required to indemnify Continental for payments made to settle the Escobar lawsuit and the trial court did not err in granting summary judgment on Continental's breach of contract claim in favor of Hartford on this basis.

### Conclusion

For the foregoing reasons, we affirm the judgment of the trial court in favor of Hartford regarding Hartford's duty to defend and indemnify Continental. We reverse the judgment of the trial court in favor of Hartford regarding Hartford's duty to defend AccuFleet and remand this case for further proceedings consistent with this opinion.