Opinion issued April 19, 2012. 



In The

Court of
Appeals

For The

First District
of Texas

————————————

NO. 01-10-00740-CV

NO. 01-10-01150-CV

———————————

Javier Alvarado, Appellant

V.

Lexington
Insurance Company, Appellee



 



 

On Appeal from the 11th District Court

Harris County, Texas



Trial Court Case No. 2009-36711A

 



 

DISSENTING
OPINION

          A
lender obtains a mortgage insurance policy to protect itself when its borrower
fails to secure his own insurance coverage for mortgaged property, placing the
lender’s collateral at risk.    The borrower in this case did not secure his
own homeowner’s coverage.  The borrower
now sues the lender’s insurance carrier directly for coverage for roof damage
to his home.   With no indicia of third-party beneficiary
status, however, the law presumes that an insurance contract governs only those
who are parties to it.  The borrower is
not.  Neither is he an intended third-party
beneficiary of his lender’s force-placed policy, because the policy neither
names the borrower as an additional insured, nor expressly declares that the
policy covers the borrower’s interest in the insured property (as opposed to
the lender’s), nor otherwise states that the borrower is a beneficiary of the
lender’s coverage.   The borrower thus
lacks standing to directly sue his lender’s insurance carrier.  On this basis, the trial court properly
granted summary judgment.  We should
affirm the trial court’s ruling; as we do not, I respectfully dissent.

Background

          The
borrower, Javier Alvarado, paid his lender, Flagstar, an amount each month that
included the principal and interest on his mortgage, as well as monies escrowed
for taxes and premiums on a mortgage insurance policy.  In his first amended petition, he alleges
that he made additional payments that Flagstar was obligated to remit to his
homeowner’s insurer, National Lloyd’s, to secure Alvarado’s own coverage, but
Flagstar “either refused to procure the coverage of [Alvarado] and/or required
[Alvarado] to purchase insurance through another company.”  Alvarado’s property sustained damage as a
result of Hurricane Ike.  Flagstar made a
claim to Lexington Insurance Company on its forced-placed mortgage policy for
losses to the Alvarado property.  Lexington
paid Flagstar $4,410.49 on its claim.        

Alvarado also made a claim under
the Lexington policy, which Lexington denied. Alvarado then sued Lexington.  Lexington moved for a traditional summary
judgment.  The trial court granted
summary judgment, ruling that Alvarado is not a direct third-party beneficiary
of Flagstar’s insurance policy; thus Alvarado lacks standing to sue under
it.  

The Contract Language

          The
policy declares “Flagstar Bank, FSB” as the sole named insured.  The supplemental declaration states that Lexington
will insure dwellings, structures, personal property, and losses of
use, but only if “the Insured has a mortgage and/or owner interest,” and the
loss is described in an agreed-upon “Reporting Mechanism.”   The
policy “Conditions and Definitions” provide that the words “you” and “your” in
the policy refer to the named insured, and that a reference to the named
insured means the “Lending Institution” shown on the declaration page.  That section further provides:  “In consideration of the premium to be charged
we will (as shown on the Declaration Page) insure. . . the
Lending Institution (you, as shown on the Declaration Page) against direct
physical loss resulting from destruction of or damage to your property. . . .”  The policy defines “Borrower” as an
individual “obligated on a ‘loan’. . . and has . . . an
interest in the property securing such ‘loan.’” 
The insurance policy neither names the borrower as an insured, nor
states that the borrower’s interest in the property is insured.

          Endorsement
#12 to the policy incorporates the coverage found in a broad form homeowner’s
policy.  The endorsement also defines “you”
and “your” to be the “named insured” recited in the declarations portion of the
policy.   The “Loss Payable” clause provides that any
“[l]oss will be adjusted with and made payable to you unless another payee is
specifically named.”  This clause does
not include the borrower, or recite that the borrower is entitled to proceeds
in excess of Flagstar’s insurable interest in the property.   Nor does it authorize the borrower to
participate in the adjustment process.  Finally,
the endorsement contains a “mortgage clause” that states:  “loss, if any, under this policy will be
payable to the mortgagee (or trustee) as its interests may appear under all
present or future mortgages upon the Covered Property described on the
reporting forms in which mortgagee may have an interest . . . .”  It does not state the reverse, or provide for
a residual payment, to a borrower for losses in excess of a lender’s interest.

Third-Party Beneficiary Status

          A
contract can benefit a third party only if the contracting parties intended to
secure such a benefit and entered into the contract directly for the third
party’s benefit.  MCI Telecomms. Corp. v. Tex. Utils. Elec. Co., 995 S.W.2d 647, 651
(Tex. 1999).  A third party claiming
rights under an agreement thus must show that he is a beneficiary of the
contract.  Id.  

          In
determining whether a third party can enforce a contract, we look only to the
intention of the contracting parties.  Id.; Union
Pac. R.R. v. Novus Int’l Inc., 113 S.W.3d 418, 421 (Tex. App.—Houston [1st
Dist.] 2003, pet. denied).  We must not
create a third-party beneficiary to a contract by implication.  MCI,
995 S.W.2d at 651; see also Tawes v.
Barnes, 340 S.W.3d 419, 425 (Tex. 2011) (“[I]n the absence of a clear and
unequivocal expression of the contracting parties’ intent to directly benefit a
third party, courts will not confer third-party beneficiary status by
implication.”).  As the Texas Supreme Court
observed in MCI:

The intention to contract or
confer a direct benefit to a third party must be clearly and fully spelled out
or enforcement by the third party must be denied.  Consequently, a presumption exists that
parties contracted for themselves unless it “clearly appears” that they
intended a third party to benefit from the contract.

 

995 S.W.2d at 651. 
We resolve all doubts against conferring third-party beneficiary
status.  Tawes, 340 S.W.3d at 425; First
Union Nat’l Bank v. Richmont Capital Partners I, L.P., 168 S.W.3d 917, 929
(Tex. App.—Dallas 2005, no pet.) (“If there is any reasonable doubt as to the
intent of the contracting parties to confer a direct benefit on the third
party, then the third-party beneficiary claim must fail.”).  

          Alvarado
contends that Endorsement #12 demonstrates that Lexington and Flagstar intended
to benefit him, because the endorsement provides types of coverage that he, as
a homeowner, could seek if he contracted directly with Lexington to procure
homeowner’s insurance.  Chief among
these:  coverage for personal property, loss
of use, debris removal, reasonable repairs, credit card fraud, personal
liability coverage, and for medical payments to others.  Endorsement #12 also refers to spouses and
households, individuals who would never be connected with a lending
institution.  Finally, the endorsement
has a “mortgage clause,” which provides that a lender with a mortgage
interest is a payee on the proceeds of a claim. 
Alvarado observes that all of these provisions are drafted with a
homeowner in mind, not a lender.

None of these provisions answers
the question:  Who is insured?  Although Endorsement #12 provides the type of
coverage that an individual homeowner would generally seek from an insurance
company,  the “definitions” section of that
very endorsement states: “[i]n this policy, ‘you’ and ‘your’ refer to the
‘named insured’ shown in the Declarations . . . .”  The declarations page specifically names “Flagstar
Bank, FSB” as the insured, not its borrower.  It does not name Alvarado, or “borrower,”
or “homeowner,” or anyone other than subsidiaries or affiliates of Flagstar, as
additional insureds.  Endorsement #12
defines the “insured” as “You and residents of your household . . . .”  This definition is partly circular because the
definition of “You” in the same endorsement is defined to mean “the named
insured” shown in the declarations, but it undisputedly does not include Alvarado—he is not the named insured.  Similarly, the section “duties in the event
of loss or damage” requires the participation of the borrower “in the event of
a dual interest.”  Because the borrower
was not named as an additional insured, he has no “dual interest” in this
policy.  

Endorsement 12 further provides
that “[e]ven if more than one person has an insurable interest in the property
covered, [Lexington] will not be liable in any one loss [t]o an ‘insured’ for
more than the amount of such ‘insured’s’ interest at the time of loss.”  Thus, for all the types of coverages listed,
liability under the policy is limited to those losses in which Flagstar has an
interest.  The “Loss Payment” provision
of this endorsement similarly reflects its limited nature:  “We will adjust all losses with you.  We will pay you unless some other person is
named in the policy or is legally entitled to receive payment.”  Reading the endorsement together with the
declarations it references, the policy provides that any losses under the
endorsement will be paid to Flagstar to the extent of its insurable
interest.  

The two other Texas courts that have
addressed whether the homeowner‑borrower is a third-party beneficiary
under a mortgage policy have reached this conclusion.  In Trevino
v. Evanston Insurance Co., the borrower similarly argued that the
endorsement provides coverage that is irrelevant to the lender and that “could
only inure to the benefit of [the borrower].” No. M‑11‑18, 2011
WL 2709063, at *3 (S.D. Tex. July 12, 2011) (order granting motion to dismiss).   In
rejecting that argument, the district court concluded that “the Policy language
unambiguously manifests the intent to provide hazard coverage to [the lender]
to the extent of its interest in the property, and any benefit conferred to
[the borrower/homeowner] as a result is incidental.” The court observed that the
borrower “has pointed to no provision that makes clearly apparent the
contracting parties’ intent to confer a direct benefit [to him].”  Id.  The court ultimately held that the
homeowner-borrower was not a third-party beneficiary under the insurance policy
at issue.  Id.; accord Barrios v. Great Am.
Assur. Co., No. H-10-3511, 2011 WL 3608510, at *3–4 (S.D. Tex. Aug. 16, 2011)
(slip op.).

          Like
the trial court here, and the district courts in Trevino and Barrios, this
Court should hold that the provisions of Endorsement #12 are limited by that
section’s definition of “you,” which is “the ‘named insured’ shown in the
Declarations”—none other than Flagstar.  See
AccuFleet, Inc. v. Hartford Fire Ins. Co., 322 S.W.3d 264, 271 & n.2
(Tex. App.—Houston [1st Dist.] 2009, no pet.) (“Continental does not qualify
for liability coverage because it does not meet the definition of an ‘insured’ under
the express terms of Section II of the policy. 
Continental . . . is not included in the definition of ‘You’ contained
in the policy,” where policy defines “you” as “the Named Insured shown in the
Declarations.”).  Reading Endorsement #12 and the policy as a whole, there
is no benefit payable to Alvarado, the borrower.   

This case more closely resembles MCI Telecommunications Corp. v. Texas
Utilities than it does Basic Capital Management.
v. Dynex.  Compare MCI, 995 S.W.2d 647, 651 (Tex. 1999) with Basic
Capital Mgmt., Inc. v. Dynex Commercial, Inc., 348 S.W.3d 894, 899–900
(Tex. 2011).  In Basic Capital, the agreement was to benefit the third parties
directly, who sought financing for entities that would be created only if the
financing was secured.   348 S.W.3d at 900.  The Texas Supreme Court held that the
agreement demonstrated an intent to benefit the third parties directly, because
if it did not, “then the [agreement] had no purpose whatever.” Id.

In contrast, MCI involved a utility company that sued a telephone company for
damage to the utility’s telephone poles. 
995 S.W.2d at 649.  The damage
occurred when the telephone company laid its fiber optic cable in a railroad
right‑of-way.  Id.  Both the telephone
company and the utility company had agreements with the railroad to use the
right of way, but had no agreement with each other.  Id.  The utility received incidental benefits
from the telephone contract, because the telephone contract required the
permission of third parties, like the utility company, to lay the cable.  Id.  The Texas Supreme Court nonetheless rejected
the utility’s argument that it was a third-party beneficiary: the utility was
not a named as a beneficiary, and nothing in the contract demonstrated that the
parties intended that the utility could sue to enforce the agreement.  Id.
at 651–52.  Like the utility in MCI, the borrower here is an incidental beneficiary to the policy,
in that the coverage afforded the lender compensates for losses to property in
which it shares a joint interest with the borrower.  But the contract does not grant the borrower the
right to sue to enforce it.  Incidental benefits
do not infuse a third party with contract enforcement rights.  See id.
(rejecting contention that incidental benefits granted to non-signatories
vest them with enforceable contract rights).

Lexington’s policy is inartful in
including potential coverages that are unlikely to be applicable to a
lender.  The borrower nonetheless is not
a third-party beneficiary to it:  he is neither
named as an additional insured nor expressly contemplated to be a beneficiary
under it, as defined by its terms—most particularly, its liability limits. 
To rely on provisions that provide homeowner‑types of coverage to
conclude that the borrower is insured for these homeowner risks would provide
more insurance coverage to the borrower than it does to the named-insured
lender, whose coverage is limited to losses in which the lender has “a mortgage
or ownership interest.”  But it is
axiomatic that a third‑party beneficiary cannot claim more rights under
the contract than that of the first-party rights it relies on for
enforcement.  Waggoner v. Herring-Showers Lumber Co., 40 S.W.2d 1, 4 (Tex. 1931)
(“The beneficiaries for whose advantage the contract was made could not acquire
a better standing to enforce such contract than that occupied by the contracting
parties themselves.”); see also Sw.
Health Plan, Inc. v. Sparkman, 921 S.W.2d 355, 358 (Tex. App.—Fort Worth 1996, no writ) (when insurance
contract contained arbitration provision, third-party beneficiary to contract
was compelled to arbitrate though beneficiary never signed contract); Nationwide of Bryan, Inc. v. Dyer, 969
S.W.2d 518, 520 (Tex. App.—Austin
1998, no pet.) (holding that third-party beneficiary is bound by terms of
contract); Stonewall Ins. Co. v. Modern
Exploration Inc., 757 S.W.2d 432, 434–35 (Tex. App.—Dallas 1988, no writ) (third-party beneficiary
“steps into shoes” of contracting party and is subject to all provisions of
contract).   

This is not to say that Alvarado is
without any possible right to policy proceeds: one that derives from Flagstar’s
contractual obligations to him, or as a judgment creditor or assignee of the
proceeds from Flagstar’s claim, should it be determined that Flagstar was
legally obligated to pay its insurance recovery to him.  Lexington will pay Alvarado, if, in the words
of the policy, he is “legally entitled to receive payment.”  But Texas has disfavored direct actions
against insurance carriers by potential claimants to insurance proceeds, unless
and until the third party’s contractual or judgment interest is known and ripe
for assignment.  See Allstate Ins. Co. v. Watson, 876 S.W.2d 145, 147 (Tex. 1994)
(holding that third parties who assert claims based on liability of insured,
but are not named as additional insured, do not have direct cause of action
against insurers).

Conclusion

          For
these reasons, this Court should hold that Alvarado is not a third-party
beneficiary to Lexington’s mortgage insurance policy.  The trial court therefore correctly rendered
summary judgment in favor of Lexington.  Because
our Court reverses the case to allow the borrower to directly sue on the
lender’s policy when that policy does not provide for it, I respectfully
dissent.

 

 

                                                                    Jane Bland

                                                                   Justice


 

Panel
consists of Justices Keyes, Bland, and Sharp.

Bland,
J., dissenting.