**United States Court of Appeals**
**Fifth Circuit**

**F I L E D**

**December 21, 2006**

**Charles R. Fulbruge III**
Clerk

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

———————————

No. 05-10866

———————————

LIBERTY MUTUAL INSURANCE COMPANY,

Plaintiff-Appellee,

v.

PAUL M. GRAHAM,

Defendant-Appellant.

———————————

On Appeal from the United States District Court
for the Northern District of Texas, Fort Worth Division

———————————

Before JONES, Chief Judge, and DAVIS, and GARZA, Circuit Judges.

W. EUGENE DAVIS, Circuit Judge:

In this diversity case, the Appellant, Paul M. Graham ("Graham"), appeals the district court's grant of summary judgment declaring that Appellee, Liberty Mutual Insurance Company ("Liberty"), has no duty to defend or indemnify him under the omnibus clause of the insurance policy issued by Liberty to Graham's employer, Eagle Contracting, L.P. ("Eagle"), covering Eagle's vehicles.

1

On appeal, Graham argues that the district court improperly considered extrinsic evidence to defeat Liberty's duty to defend in violation of Texas's eight-corners rule. Because we agree, we REVERSE the district court's judgment and RENDER judgment that Liberty has a duty to defend Graham. We also conclude that genuine issues of material fact remain regarding whether Graham was using the company vehicle with the permission of Eagle at the time of the accident. Accordingly, we REVERSE the district court's summary judgment declaring that Liberty has no duty to indemnify Graham and REMAND to the district court for further proceedings.

## I.

On the night of November 11, 2003, Graham was driving a company vehicle belonging to his employer Eagle when he collided with a motorcycle carrying Mikel Johnson and Christy Wright ("state court plaintiffs"). At the time of the accident, Graham was on his way home from a local restaurant where he had been celebrating his 40th birthday with a friend. Graham, who had consumed alcoholic beverages at the restaurant, fell asleep while driving his company truck and ran into the back of the state court plaintiffs' motorcycle.

Johnson and Wright filed suit in state district court asserting that Graham negligently operated the vehicle and Eagle was negligent for entrusting the vehicle to Graham.[1] The state

---

[1]Because Plaintiffs make identical claims against the corporate entities of Eagle Contracting L.P. and Eagle

2

court plaintiffs also asserted claims against Eagle based on a respondeat superior theory.

At the time of the accident, Liberty's policy covering the Eagle vehicle provided in part as follows:

> We will pay all sums an insured legally must pay as damages because of bodily injury or property damage to which this insurance applies, caused by an accident and resulting from the ownership; maintenance or use of a covered auto.
>
> We have the right and duty to defend any suit asking for these damages.  However, we have no duty to defend suits for bodily injury or property damage not covered by this Coverage Form.  We may investigate and settle any claim or suit as we consider appropriate.

The policy defined the word "insured," as used in the policy, as follows:

> WHO IS AN INSURED
>
> The following are insureds:
>
> a.  You for any covered auto.
>
> b.  Anyone else while using with your permission a covered auto you own, hire or borrow . . . .

The policy explains that the words "you" and "your" refer to Eagle, the named insured.  Graham asserts coverage through the permissive-user or omnibus clause in subpart (b).

With regard to Graham's permission to use his company vehicle, the state court plaintiffs' petition states in part:

- At the time of the incident complained of, Defendant Graham was driving a Truck registered to his employer

- Such vehicle was entrusted to defendant Graham by [Eagle] as

---

Contracting, Inc., (Eagle Contracting, Inc., is a predecessor of Eagle Contracting, L.P.) as well as Billy Haynes (a partner of Eagle Contracting, L.P. and owner of the truck), we refer to these entities and individual collectively as "Eagle."

part of his job

- Paul Graham has a long history of permissive use of the vehicle notwithstanding any written or unwritten policies to the contrary

- Eagle . . . knew and condoned the use of a company vehicle by Graham and other employees in violation of purported policies

- Eagle has no effective or even attempted policy or practice to regulate personal use of vehicles other than [giving employees a written vehicle policy]

- Paul Graham had all of his gasoline and maintenance costs reimbursed by Eagle

- Eagle had receipts clearly indicative of the use of Graham's company vehicle for personal use

- The night of the incident . . . was the fortieth (40) Birthday of Defendant Graham. [Eagle] regularly allow[s] some of its employees, including Defendant Graham, to drive business vehicles in pursuit of personal activities.

Graham asserts that the allegations at least support an inference that he had implied permission to use the Eagle vehicle.

Liberty brought this action for declaratory judgment in the district court against Graham seeking a declaration that Liberty is not obligated to defend or indemnify Graham in the underlying tort suit. In its motion for summary judgment, Liberty sought to establish the unauthorized nature of Graham's use of the vehicle by introducing Eagle's written vehicle usage policy ("Vehicle Policy") as well as evidence of Graham's intoxication. The Vehicle Policy was given to Graham when he received his company truck and states that "usage of the [company] vehicle must be limited to company related business."

Graham argued to the district court that Liberty owed him a defense because under Texas's eight-corners rule, a liability

4

insurer's duty to defend is to be determined solely from the terms of the insurance policy and the pleadings of the underlying plaintiff. Graham contended that because the complaint alleges permission and the policy covers permissive drivers, the duty to defend was invoked. Liberty argued that the complaint does not allege permissive use of the vehicle and that, even if it does, this case justifies an exception to the eight-corners rule and considering extrinsic evidence is appropriate because such evidence relates solely to a coverage determination.

The district court, while acknowledging the general prohibition against extrinsic evidence in duty to defend disputes, concluded that extrinsic evidence was proper in this case for both of the reasons asserted by Liberty. First, the district court found that the insurance policy and third party complaint did not permit a conclusive determination on coverage. The court explained that the state court plaintiffs' reference to the use of the vehicle with permission at other times and places did not address permission on the night in question. Second, the district court found that the extrinsic evidence related only to a coverage determination.

Based on these conclusions, the district court considered extrinsic evidence and found that the evidence affirmatively established a lack of permissive use by Graham at the time of the accident. The judge particularly relied upon evidence that the

5

defendant had received and signed a copy of the Vehicle Policy. As a result, the district court found that the insurance company had neither a payment nor defense obligation and granted Liberty's motion for summary judgment. Graham lodged a timely appeal.

## II.

## A.

The central issue in this case is whether the district court erred in concluding that Graham was not entitled to a defense from Liberty in the state court suit brought by the state court plaintiffs. The resolution of this question depends on whether the state court plaintiffs' allegations are sufficient to demonstrate that Graham was a permissive user of the Eagle vehicle and an "insured."

This court reviews whether an insurer has a duty to defend its insured in an underlying suit as a <u>de novo</u> question of law.[2] Similarly, this court reviews <u>de novo</u> a district court's grant of summary judgment, applying the same standard as below.[3] The parties agree that Texas law governs this diversity case.

As a general proposition, Texas has followed the "eight-corners rule." Under this rule, an insurer's duty to defend is determined by the underlying plaintiff's pleadings, considered in light of the policy provisions, without regard to the truth or

---

[2]<u>Northfield Ins. Co. v. Loving Home Care, Inc.</u>, 363 F.3d 523, 528 (5th Cir. 2004).

[3]<u>Ford Motor Co. v. Tex. Dep't of Transp.</u>, 264 F.3d 493, 498 (5th Cir. 2001).

falsity of those allegations.[4]  As the name of the rule suggests, only two documents are ordinarily relevant to the determination of the duty to defend: the policy and the pleadings of the underlying claimant.[5]  Facts outside the pleadings, even those easily ascertained, are ordinarily not material to the determination and allegations against the insured are liberally construed in favor of coverage.[6]

If the four corners of a petition allege facts stating a cause of action which potentially falls within the four corners of the policy's scope of coverage, the insurer has a duty to defend.[7]  If all the facts alleged in the underlying petition fall outside the scope of coverage, then there is no duty to defend, but we resolve all doubts regarding duty to defend in favor of the duty.[8]

After the district court rendered its judgment, the Texas Supreme Court issued its decision in GuideOne Ins. Co. v. Fielder Rd. Baptist Church[9] which we conclude controls this appeal.[10]  In

---

[4]GuideOne Ins. Co. v. Fielder Rd. Baptist Church, 197 S.W.3d 305, 308 (Tex. 2006).

[5]Id.

[6]Id.

[7]Northfield, 363 F.3d at 528.

[8]Id.

[9]197 S.W.3d 305.

[10]Liberty cites this court's post-GuideOne opinion in Adams v. Travelers Indemnity Co. Of Connecticut, 465 F.3d 156 (5th Cir. 2006), for the proposition that an eight-corners analysis is inapplicable to cases involving coverage determinations which involve a permissive user clause.  However, the Adams decision does not so hold.  Further, GuideOne was decided after the parties had both briefed and argued the Adams case.  While we would be bound by another panel's interpretation of a state court decision, it is clear to us that the Adams panel did not consider

7

that case, GuideOne Insurance Company ("GuideOne") issued a liability policy to Fielder Road Baptist Church ("Church") which included liability coverage for claims against the Church for sexual misconduct of its employees occurring during the policy period of March 31, 1993 to March 31, 1994. In 2001, Jane Doe sued the Church and a former employee, Charles Patrick Evans, for sexual misconduct. In her pleadings, Jane Doe alleged that "[a]t all times material herein from 1992 to 1994, Evans was employed as an associate youth minister and was under [the Church]'s direct supervision and control when he sexually exploited and abused Plaintiff." Based on these allegations, the Church asserted that the policy required GuideOne to defend it in the lawsuit and indemnify it for any judgment or settlement.

GuideOne challenged its duty to defend and obtained discovery from the Church indicating that Evans's employment ended on December 15, 1992, before the insurance policy became effective. This evidence led the trial court to render judgment declaring that GuideOne had no duty to defend the Church in the underlying sexual misconduct case. The court of appeals reversed the summary judgment, concluding that, based on the eight-corners rule, the trial court had erred in considering extrinsic evidence to defeat

GuideOne. This conclusion is based on our review of the record in Adams revealing no supplemental briefing calling GuideOne to the panel's attention together with the fact that the panel does not refer to GuideOne in its decision.

8

GuideOne's duty to defend its insured.

The Texas Supreme Court affirmed the decision of the court of appeals, agreeing that the trial court had erred in considering extrinsic evidence.[11] The court began its analysis by citing with approval this court's prediction in Northfield that the Texas Supreme Court would only recognize an exception to the eight-corners rule in the narrow circumstance where "it is initially impossible to discern whether coverage is potentially implicated and when the extrinsic evidence goes solely to a fundamental issue of coverage which does not overlap with the merits of or engage the truth or falsity of any facts alleged in the underlying case."[12]

The court explained that GuideOne's case did not fit this predicted exception on either count. First, the underlying plaintiff's complaint clearly alleged that Evans was employed during the relevant policy period and the conduct alleged was covered by the terms of the policy.[13] Second, GuideOne was attempting to rely on extrinsic evidence that was relevant not only to a coverage issue but also to the merits. Specifically, GuideOne's evidence concerning Evans's employment directly contradicted the plaintiff's allegations that the Church employed Evans during the relevant coverage period, an allegation the court found material to the merits of the underlying plaintiff's claims

---

[11]GuideOne, 197 S.W.2d at 311.
[12]Id., at 308-09 (quoting Northfield, 363 F.3d at 531 (emphasis in original)).
[13]Id. at 310.

9

that the Church directly supervised and controlled Evans at the time he committed the sexual assaults.[14]

The Texas Supreme Court noted that the exception urged by GuideOne would conflate the insurer's defense and indemnity duties without regard for the policy's express terms.[15] The court explained that the duty to defend is broader than the duty to indemnify and that "[a] plaintiff's factual allegations that potentially support a covered claim is all that is needed to invoke the insurer's duty to defend, whereas, the facts actually established in the underlying suit control the duty to indemnify."[16]

B.

We therefore turn to a consideration of whether the facts alleged in the state court complaint assert a covered claim against Graham. Some of the state court complaint's factual allegations are devoted to demonstrating Graham's longstanding permission from Eagle to use his company vehicle for personal use:

- Paul Graham has a long history of permissive use of the vehicle notwithstanding any written or unwritten policies to the contrary

- Eagle . . . knew and condoned the use of a company vehicle by Graham and other employees in violation of purported policies

- Eagle has no effective or even attempted policy or practice to regulate personal use of vehicles other than [giving employees the Vehicle Policy]

---

[14]See id.
[15]Id.
[16]Id. (citation omitted).

- Eagle had receipts clearly indicative of the use of Graham's company vehicle for personal use

The complaint also describes Graham's personal pursuit on the night of the accident and then immediately asserts that Eagle permitted its employees to use its vehicles in personal pursuits:

- The night of the incident was . . . the fortieth Birthday of Defendant Graham. . . . Eagle . . . allow[s] some of its employees, including Defendant Graham, to drive business vehicles in pursuit of personal activities

Texas law requires us to consider the allegations in the complaint along with any reasonable inferences that flow from the facts alleged.[17] Taking all the facts alleged in combination–including (i) Graham's long history of permissive personal use of the vehicle, (ii) Eagle's failure to enact any effective restrictions on personal use of company vehicles, and (iii) Graham's use of his company vehicle for a personal activity on the night of the accident–it is reasonable to infer that the plaintiffs assert that Graham was driving the vehicle with Eagle's permission at the time of the accident.[18]

Our conclusion that the underlying plaintiffs' complaint alleges a covered claim is supported by the Texas Supreme Court's command to liberally construe a plaintiff's allegations in favor of

---

[17]See Allstate Ins. Co. v. Hallman, 159 S.W.3d 640, 645 (Tex. 2005).

[18]See id. (applying eight-corners analysis; although the petition against the insured homeowner did not contend the event alleged to have caused damage to insured property was undertaken with a profit motive, the court inferred a profit motive from petition's allegations).

coverage and to resolve all doubts regarding the duty to defend in favor of the insured.[19]

                                    C.

Liberty also argues that even if the plaintiffs' allegations facially invoke its duty to defend, extrinsic evidence of Graham's permission to use the company truck is appropriate under the limited exception to the eight corners rule applied by some Texas appellate courts and approved in the GuideOne decision's dicta. Liberty contends that such evidence relates solely to Graham's status as an insured and, while it may contradict the merits of the state court plaintiffs' various claims against Eagle, the evidence does not challenge the merits of the state court plaintiffs' case against Graham.[20]

An examination of the case discussed approvingly by the Texas Supreme Court for its application of a narrow eight-corners exception, International Service Insurance Co. v. Boll,[21] illustrates the inapplicability of such an exception to the present case. In Boll, the insurer refused to defend its insured in an auto-collision case because of a policy endorsement that excluded

_____

[19]See Nat'l Union Fire Ins. Co., 939 S.W.2d at 141 ("When applying the eight corners rule, we give the allegations in the petition a liberal interpretation."); see also King v. Dallas Fire Ins. Co., 85 S.W.3d 185, 187 (Tex. 2002) ("We resolve all doubts regarding the duty to defend in favor of the duty.").

[20]See GuideOne, 197 S.W.3d at 310 (noting that courts have recognized an exception to the eight-corners rule under limited circumstances involving pure coverage questions).

[21]392 S.W.2d 158 (Tex. Civ. App.—Houston 1965, writ ref'd n.r.e.).

coverage for "any claim arising from accidents which occur while any automobile is being operated by Roy Hamilton Boll." The plaintiff's petition alleged only that the insured's son was driving the insured's car when the accident occurred, but did not otherwise identify the driver. The parties eventually stipulated that the insured's only son, Roy Hamilton Boll, was driving the insured vehicle. The court of appeals noted that without reference to this extrinsic evidence identifying the driver, it was impossible to determine whether coverage was afforded.[22] The court, after finding they could properly consider the stipulation, concluded that the insurer had no duty to defend.[23]

Unlike the situation in GuideOne or in the present case, the policy and complaint in Boll did not bring the claim within or outside the scope of coverage. Reference to the eight-corners in Boll failed to allow a determination as to coverage because of the petition's imprecision in identifying the son who was driving the vehicle involved in the collision.[24] In this case, the complaint alleges facts sufficient to infer that Graham was driving with Eagle's express or implied permission. Since the policy unambiguously covers permissive drivers, the duty to defend is

---

[22]See id. at 160.
[23]Id. at 161.
[24]See id. at 160.

invoked.[25]  Accordingly, the <u>Boll</u> exception has no application.[26]

We also find <u>Boll</u> and other Texas intermediate court decisions allowing extrinsic evidence to establish a lack of coverage are distinguishable because they involved explicit policy coverage exclusion clauses, the applicability of which could not be established under the allegations of the complaint but rather required reference to unrelated but readily ascertainable facts.[27] The coverage issue in the instant case does not turn on the existence of such a clause.  Because none of the exceptions to the rule allowing a court to consider extrinsic evidence in this circumstance apply, Liberty owes Graham a duty to defend.

D.

Turning to the duty to indemnify, the district court concluded that no issue of fact was presented as to whether Graham was a

---

[25]<u>GuideOne</u>, 197 S.W. at 310 ("A plaintiff's factual allegations that potentially support a covered claim is all that is needed to invoke the insurer's duty to defend.").

[26]<u>See</u> <u>id.</u>, 197 S.W. at 308-09 (citing with approval this court's prediction in <u>Northfield</u>, 363 F.3d at 531, that the Texas Supreme Court would only recognize an exception to the eight-corners rule in the narrow circumstance where "it is initially impossible to discern whether coverage is potentially implicated <u>and</u> when the extrinsic evidence goes solely to a fundamental issue of coverage which does not overlap with the merits of or engage the truth or falsity of any facts alleged in the underlying case.").

[27]<u>See, e.g.,</u> <u>Farm Fire & Cas. Co. v. Wade</u>, 827 S.W.2d 448, 453 (Tex.App.—Corpus Christi 1992, writ denied) (extrinsic evidence introduced to establish that plaintiff was injured while paid passenger on a vessel; such injuries were explicitly excluded from coverage); <u>Boll</u>, 392 S.W.2d at 160-61 (extrinsic evidence introduced to establish the identity of driver where specific policy coverage exclusion named an excluded driver); <u>see also</u> <u>King</u>, 85 S.W.3d at 189.

14

permissive user of the insured vehicle and therefore found that Liberty had no duty to indemnify. We disagree.

Graham testified in his deposition that it was his understanding that he had permission to use the vehicle on the night of the accident based on his extensive personal use of the vehicle and the personal use of company vehicles by other employees without objection by company supervisors. He stated that the company never limited the personal use of company vehicles by him or other employees in the face of their knowledge of such use. In contrast, Eagle Company President Charles Howard testified that the Vehicle Policy, which Graham received and signed, was a binding company rule and adherence to the policy, including the bar on personal use, was a precondition for any employee's permission to drive trucks owned by Eagle. He further stated in a sworn affidavit that Graham never asked him for permission to use the company vehicle for a personal outing on the evening of the accident. Howard admitted in deposition testimony, however, his belief that employees likely used their company vehicles for personal use.[28] He also admitted that he had not sanctioned Graham for using a company vehicle for a personal visit to his daughter in East Texas. In addition, Billy Haynes, a limited partner of Eagle, stated in his deposition that he did not question Graham's personal

---

[28]Q: So, you know, do you think that in reality, since these people are taking these vehicles home, that they probably do use it for personal use?
    A: They probably do.

15

use of a company truck when Graham traveled to Haynes's house on at least one weekend in order to accompany him on a fishing trip.

We conclude that these statements create a fact issue about whether Graham was driving his company vehicle with the implied permission of Eagle on the night of the accident. Summary judgment was therefore inappropriate on the indemnity issue.

III.

Because we find that correct application of Texas's eight-corners rule requires Liberty to defend the suit against Graham, we REVERSE the district court's contrary ruling and RENDER judgment that Liberty has a duty to defend Graham in the state court plaintiffs' litigation. Further, because we are persuaded that a genuine issue of material fact exists as to whether Graham qualifies as an insured under the policy, we REVERSE the grant of summary judgment finding Liberty has no duty to indemnify and REMAND the case for further proceedings.

REVERSED AND RENDERED IN PART.

REVERSED AND REMANDED IN PART.