Affirmed and Majority and Dissenting Opinions filed May 26, 2011.

 

In The

 

Fourteenth Court of
Appeals

___________________

 

NO. 14-09-00860-CV

___________________

 

Weingarten Realty Management Company and
Scottsdale Insurance Company, Appellants

 

V.

 

Liberty Mutual Fire Insurance Company,
Appellee



 



 

On
Appeal from the 151st District Court

Harris County,
Texas



Trial Court Cause No. 2006-70622

 



 

 

MAJORITY OPINION

Appellants Weingarten Realty
Management Company and Scottsdale Insurance Company appeal the trial court’s
order granting summary judgment in favor of appellee Liberty Mutual Fire
Insurance Company and denying their motion for partial summary judgment, for a
new trial, for rehearing, and for clarification.  We affirm.  

I

            This
case involves an insurance-coverage dispute arising from an underlying lawsuit,
Johnson, et ux. vs. Weingarten Realty Management Co., No. 2002-46187.  In
that case, Connie Johnson, a manager of a Fashion Cents retail store, was
assaulted by an unknown man who entered the store after business hours.  Johnson
sued her employer, Norstan Apparel Shops, Inc., d/b/a Fashion Cents, and
Weingarten Realty Management Company (“Weingarten Management”), the entity she alleged
leased the retail space occupied by Fashion Cents.  However, the actual lessor
was Weingarten Realty Investors (“Weingarten Investors”), an entity separate
and distinct from Weingarten Management.  As its name suggests, Weingarten
Management only managed the property.  Although Johnson amended her petition seven
times, the error was never corrected and Weingarten Management never challenged
the assertion.  

            In
accordance with the lease between Norstan and Weingarten Investors, Norstan secured
a general commercial-liability insurance policy through Liberty Mutual Fire
Insurance Company.  The policy contained an endorsement naming “all lessors of
the premises leased to [Norstan] as additional insureds under the policy.”  Weingarten
Investors therefore became an insured lessor under the Liberty Mutual policy. 
Weingarten Management, however, maintained its own general commercial-liability
policy with Scottsdale Insurance Company.  When Johnson named Weingarten
Management in her suit, Weingarten Management initially defended pursuant to a
self-insured retention, and Scottsdale later assumed the defense.  

Shortly before trial,
Weingarten Management made demand on Liberty Mutual for a defense as an
additional insured under the Liberty Mutual policy between Norstan and
Weingarten Investors.  Liberty Mutual refused.  The case was eventually tried
and the jury found no liability on the part of Weingarten Management. 
Weingarten Management and Scottsdale then brought this suit against Liberty Mutual
for $242,391.57 in incurred defense costs, arguing Liberty Mutual owed a duty
to defend because Johnson named Weingarten Management as a lessor in her
underlying petition.  Weingarten Management and Scottsdale concede Weingarten
Management is not actually a lessor of the property.  Nevertheless, the
appellants argue that the mistaken allegation gave rise to a duty to defend
because the “eight-corners rule” restricted the trial court from looking
outside the pleadings and insurance policy to determine Weingarten Management
was not the true lessor.   

In considering the
cross-motions for summary judgment, however, the trial court examined evidence
extrinsic to Johnson’s petition in the underlying suit and the Liberty Mutual
policy to determine Weingarten Management was not a lessor and therefore was
not entitled to coverage under the Liberty Mutual policy’s “additional insured”
endorsement.  The trial court entered summary judgment in favor of Liberty
Mutual and denied the appellants’ motions for partial summary judgment, for a
new trial, for rehearing, and for clarification.  This appeal followed.  

II

In their first issue,
the appellants argue the trial court was bound by the eight-corners rule and
erred when it considered extrinsic evidence in granting Liberty Mutual’s motion
for summary judgment.  In their second issue, the appellants contend that in
its examination of the extrinsic evidence, the trial court erred by finding as
a matter of law that Weingarten Management was not a lessor because the terms of
the lease require Norstan to name Weingarten Management as an additional
insured.  In their third issue, the appellants argue there was a fact issue as
to whether Liberty Mutual was estopped from contesting that Weingarten
Management was a lessor.  In their fourth, fifth, and sixth issues, the appellants
contend that the trial court erred to the extent its order can be read to deny
the appellants’ subrogation rights, pre-tender defense costs, and attorneys’
fees.  Because we find the trial court correctly entered summary judgment in
favor of Liberty Mutual, and correctly denied the appellants’ motion for
partial summary judgment, we overrule appellants’ issues one through three and
consequently do not reach issues four through six.  

A

We review the trial
court’s grant of summary judgment de novo.  Joe v. Two Thirty Nine Joint
Venture, 145 S.W.3d 150, 156–57 (Tex. 2004).  A movant must establish its
right to summary judgment by showing that no genuine issue of material fact
exists and that it is entitled to judgment as a matter of law.  Nixon v. Mr.
Prop. Mgmt. Co., 690 S.W.2d 546, 548 (Tex. 1985).  We take as true all
evidence favorable to the non-movant, and we indulge every reasonable inference
and resolve any doubts in the non-movant’s favor.  Joe, 145 S.W.3d at
157.  We review a summary judgment for evidence that would enable reasonable
and fair-minded jurors to differ in their conclusions.  Wal-Mart Stores,
Inc. v. Spates, 186 S.W.3d 566, 568 (Tex. 2006) (per curiam).  When we
review cross-motions for summary judgment, we consider both motions and render
the judgment that the trial court should have rendered.  Coastal Liquids
Transp., L.P. v. Harris Cnty. Appraisal Dist., 46 S.W.3d 880, 884 (Tex. 2001).

The appellants first
argue that the trial court erred in granting summary judgment in Liberty
Mutual’s favor because it considered evidence in contravention of the
eight-corners rule.  The eight-corners rule provides that Texas courts may look
only to the pleadings and the insurance policy to determine whether a duty to
defend exists.  Nat’l Union Fire Ins. Co. of Pittsburg, Pa. v. Merch. Fast
Motor Lines, Inc., 939 S.W.2d 139, 141 (Tex. 1997).  The allegations in the
pleadings are considered in light of the policy provisions without regard to
their truth or falsity.  Argonaut Sw. Ins. Co. v. Maupin, 500 S.W.2d
633, 635 (Tex. 1973); Heyden Newport Chem. Corp. v. S. Gen. Ins. Co.,
387 S.W.2d 22, 24 (Tex. 1965).  Even if the allegations are groundless, false,
or fraudulent, the insurer is obligated to defend.  Zurich Am. Ins. Co. v.
Nokia, Inc., 268 S.W.3d 487, 491 (Tex. 2008).  Facts outside the pleadings,
even those easily ascertained, are not ordinarily material to the determination
of whether the duty to defend exists, and allegations against the insured are
liberally construed in favor of coverage.  See Nat’l Union, 939 S.W.2d
at 141.  

The Supreme Court of Texas has never expressly
recognized an exception to the eight-corners rule.  But it has acknowledged
that other courts have drawn a “very narrow exception” allowing extrinsic
evidence “only when relevant to an independent and discrete coverage issue, not
touching on the merits of the underlying third-party claim.”  GuideOne Elite
Ins. Co. v. Fielder Road Baptist Church, 197 S.W.3d 305, 308 (Tex. 2006); see
also Pine Oak Builders, Inc. v. Great Am. Lloyds Ins. Co., 279 S.W.3d 650,
654 (Tex. 2009).  In GuideOne, the court noted the Fifth Circuit’s
observation that if the Supreme Court of Texas were to recognize an exception
to the eight-corners rule, it would likely do so only under circumstances where
“it is initially impossible to discern whether coverage is potentially
implicated and when the extrinsic evidence goes solely to a fundamental
issue of coverage which does not overlap with the merits of or engage the truth
or falsity of any facts alleged in the underlying case.”  197 S.W.3d at 308–09
(citing Northfield Ins. Co. v. Loving Home Care, Inc., 363 F.3d 523, 531
(5th Cir. 2004)) (emphasis in original).  The GuideOne court resolved
the case before it without expressly approving of this exception because the
extrinsic evidence in that case was relevant to both coverage and the merits,
so the exception did not apply.  Id. at 309.  

1

The exception was first articulated in International
Service Insurance Co. v. Boll, 392 S.W.2d 158 (Tex. Civ. App.—Houston 1965,
writ ref’d n.r.e.).  In Boll, the insured’s automobile-liability policy
excluded coverage of “any claim arising from accidents which occur while any
automobile is being operated by Roy Hamilton Boll.”  Id. at 160.  Roy
was the insured’s only son.  Id.  The suit brought against the insured
alleged that the insured’s son drove the automobile in question but did not
name Roy expressly.  Id.  The parties later stipulated, however, that
the son referred to in the petition was indeed Roy.  Id.  The court
considered the stipulation and found the insurer owed no duty to defend, reasoning
that an insurer “cannot be called on to defend a suit against the [insured] in
which the petition upon its face alleges a state of facts not covered by but
excluded from the provisions of the policy.”  Id.  In the GuideOne decision,
the supreme court observed that the extrinsic evidence in Boll “went
strictly to the coverage issue” and “did not contradict any allegation in the
third-party claimant’s pleadings material to the merits of that underlying
claim.”  GuideOne, 197 S.W.3d at 310.  In other words, the insurer did
not claim Roy Hamilton Boll was not liable for the accident.  Rather, the
insurer argued that even if he were, there were no potential underlying facts
under which his liability could be covered by his father’s policy.  See Boll,
392 S.W.2d at 161 (“Under the facts of this case the petitions filed against [Roy’s
father] cannot be construed to allege a claim potentially within the coverage
of the policy of insurance in question.”).  

2

The Texarkana court of appeals followed Boll
when it faced a similar scenario in Cook v. Ohio Casualty Insurance Co.,
418 S.W.2d 712 (Tex. Civ. App. —Texarkana 1967, no writ).  The policy in Cook
excluded coverage where the insured was “driving an automobile owned by a
relative who was a resident of the same household.”  Id. at 714.  The
insured stipulated that she was living with her mother and was driving her
mother’s 1953 Studebaker at the time of the accident.  Id.  The Cook
court followed Boll and held that the trial court could consider extrinsic
evidence.  But the Cook court went further by attempting to square its
decision with the supreme court’s directive to consider a complainant’s
allegations “without reference to truth or falsity” and “without reference to
what the parties know or believe the true facts to be.”  See Heyden, 387
S.W.2d at 24.  In doing so, the Cook court contrasted Boll, in
which the insurer’s position was that the policy excluded coverage for
liability incurred by the insured’s son for any claim, regardless of merit, with
the supreme court’s holding in Heyden, in which the insurer’s ultimate position
was that the underlying claim could easily be proved meritless.  See Cook,
418 S.W.2d at 715.  The court went on to surmise that the supreme court had
implicitly drawn a distinction “between cases in which the merit of the claim
is the issue and those where the coverage of the insurance policy is in
question.  In the first instance the allegation of the petition controls, and
in the second the known or ascertainable facts are to be allowed to prevail.” [1]  Id. at
716.  

3

The Corpus Christi court of appeals first recognized
the exception in Gonzales v. American States Insurance Co of Texas., 628
S.W.2d 184, 186 (Tex. App.—Corpus Christi 1982, no writ).  The court in Gonzales
did not find it necessary to apply the exception because it found the
allegations within the petition were sufficient to give rise to the duty to
defend, but recognized that courts may consider extrinsic evidence “where the
petition does not allege facts sufficient for a determination of whether those
facts, even if true, are covered by the policy . . . .”  Id. at 186.  The
Corpus Christi court would later employ the exception it articulated in Gonzales
in State Farm Fire & Casualty Co. v. Wade, 827 S.W.2d 448, 452–53
(Tex. App.—Corpus Christi 1992, writ denied).  The Wade court found the
exception applicable because “the facts in the petition do not establish
whether there is even a potential for coverage.”  Id. at 451.  The
underlying suit in Wade involved a wrongful-death claim arising out of a
boating accident.  Id. at 449–50.  At issue was the applicability of a
provision excluding coverage of accidents arising from use of the boat in a “business
pursuit.”  Id. at 450–51.  The court, however, found it impossible within
the eight corners to determine how the boat was used at the time of the
accident.  Id. at 451.  But rather than find a duty to defend because
facts potentially involving coverage were alleged in the petition, the court
considered extrinsic evidence to determine how the boat was used.  The court
wrote:  “It makes no sense to us . . . to say that extrinsic evidence should
not be admitted to show that an instrumentality (boat) was being used for a
purpose explicitly excluded from coverage particularly, when doing so does not
question the truth or falsity of any facts alleged in the underlying petition
filed against the insured.”  Id. at 453.  

This court has not had occasion to consider a case in
which the extrinsic evidence went solely to the issue of coverage.[2]  Most recently, we
declined to apply the exception in a case in which the extrinsic evidence
related to both coverage and liability, which we acknowledged then, and again
today, is a combination the supreme court explicitly rejected in GuideOne.
 See D.R. Horton-Texas, Ltd. v. Markel Int’l Ins. Co., 300 S.W.3d 773,
786 n.19 (Tex. App.—Houston [14th Dist.] 2006), rev’d in part on other
grounds, 300 S.W.3d 740 (Tex. 2009).  

B

In Boll, Cook, and Wade, the terms
of a policy exclusion dictated there was no potential for coverage under the
facts alleged in the petition..  The merits of the underlying claim did not
come into play because even if the allegations were true, a policy exclusion
made coverage impossible.  But Liberty Mutual does not urge the applicability
of a policy exclusion.  Instead, Liberty Mutual argues that it has no duty to
defend because even if the facts alleged are true, Weingarten Management is a
stranger to the policy.  Although the circumstances giving rise to Liberty
Mutual’s argument that the exception applies are different from the cases
discussed above, the ultimate position is the same—an insurer should not be
required to defend when extrinsic evidence can easily establish that the policy
does not provide coverage even if all of the allegations in the plaintiff’s
petition are true.  

The rationale behind the eight-corners rule is to
require insurers to defend the insured against all claims, even those without
merit.  See Tri-Coastal Contractors, Inc. v. Hartford Underwriters
Ins. Co., 981 S.W.2d 861, 863 (Tex. App.—Houston [1st Dist.] 1998, pet.
denied).  To the insured, a meritless claim still requires a defense.  But the
protection the eight-corners rule provides exists for the benefit only of the insured. 
It is the insured who is entitled to trust that his insurer will defend him
against all covered claims, meritorious or not.  A stranger to the policy
neither needs nor should expect this benefit. 

Liberty Mutual does not argue that the claim brought
against Weingarten Management is without merit.  Rather, Liberty Mutual argues
that Weingarten Management is not an insured under the Norstan policy and, as a
total stranger to the policy, is not entitled to a defense against any claim.  Enforcing
the rule under these circumstances does not further the policy underlying the
eight-corners doctrine.  This is a “pure coverage” question in which Liberty
Mutual does not question the merits of the underlying third-party claim.  See
GuideOne, 197 S.W.3d at 308.  

In light of the facts of this case, we are persuaded of
the need for a very narrow exception to the eight-corners rule.  The exception
applies only when an insurer establishes by extrinsic evidence that a party
seeking a defense is a stranger to the policy and could not be entitled to a
defense under any set of facts.  Under this exception, the extrinsic evidence
must go strictly to an issue of coverage without contradicting any allegation
in the third-party claimant’s pleadings material to the merits of that
underlying claim.  See GuideOne, 197 S.W.3d at 310.  

1

Although the supreme court declined to expressly
recognize this exception in GuideOne, it was not presented with facts
under which the exception would potentially apply.  See id. at 308–09.  GuideOne
concerned an action against a church alleging that its youth minister had
sexually assaulted the plaintiff.  Id. at 307.  GuideOne filed a
declaratory-judgment action seeking a determination that it had no duty to
defend because the youth minister left his job before the policy’s effective
date.  Id.  The court held the extrinsic evidence GuideOne sought to
introduce did not fit the exception because it “directly contradicts the plaintiff’s
allegations that the [c]hurch employed [the youth minister] during the relevant
coverage period, an allegation material, at least in part, to the merits of the
third-party claim.”  Id. at 310.  The court contrasted the case before
it with Boll, in which the extrinsic evidence went solely to the
coverage issue and did not contradict any allegation in the third-party
claimant’s pleadings.  Id.  Although GuideOne argued it should not have
to defend because it knew the youth minister was not in fact an employee of the
church during the period in question, the court reiterated that the duty to
defend required GuideOne to establish such facts in defense of its insured,
rather than as an adversary in a declaratory-judgment action.  Id. at
311 (citing Heyden, 387 S.W.2d at 25).

There is a critical distinction between GuideOne and
this case.  In GuideOne, there was no question that the insurer had a
policy with the church at the time of suit and that the insurer was therefore
required to defend the church against at least some claims. 
Accordingly, the GuideOne court held the insurer owed a defense because the
allegations of sexual misconduct were “potentially within coverage, even if the
plaintiff’s claims were false or fraudulent.”  Id.  Put another way, the
facts alleged, if true, would support coverage.  The insurer’s position in GuideOne
simply was that the claim brought against its insured was meritless and
could be easily disproved by showing the minister was no longer employed by the
church when the policy became effective.  But although the minister may have
left his job before the policy’s effective date, the church nonetheless had an
effective policy at the time of suit that entitled it to a defense.  In
contrast, Liberty Mutual makes no comment on the merits of the underlying
claim, but rather contends only that Weingarten Management simply could not be
an insured as to any claim because it is a total stranger to the policy.   

2

The case before us is much more similar to Blue
Ridge Insurance Co. v. Hanover Insurance Co., 748 F. Supp. 470 (N.D. Tex.
1990), than it is to GuideOne.  In Blue Ridge, Southern Ionics,
Inc., issued a company truck to one of its employees, Jimmy Beech, but Jimmy’s
son, Scottie, was driving when the truck was involved in an injury accident.  Id.
at 471.  The injured driver of the other vehicle sued Southern Ionics,
Jimmy, and Scottie, and mistakenly alleged in his petition that Southern Ionics
had granted Jimmy authority to allow Scottie to drive the truck.  Id. 
Jimmy and Scottie’s insurer, Blue Ridge, assumed a defense but claimed Southern
Ionics’s insurer, Hanover, also owed Jimmy and Scottie a defense as the
“primary insurer.”  Id. at 472.  Hanover refused to defend on the
grounds that the policy covered only the employer and persons driving a company
vehicle with Southern Ionics’s permission.  Id.  Since it was undisputed
that Scottie, not Jimmy, was driving the truck, and that under no circumstances
was Scottie a permissive driver, Hanover argued it had no duty to defend.  Id.

As in the case before us, Blue Ridge argued that the
false allegation that Scottie was driving the truck with Southern Ionics’s
permission, granted through Jimmy, gave rise to the duty to defend.  Id. at
472–73.  But the court held that the authorities Blue Ridge relied on “assume .
. . that the person claiming a right to a defense is an insured.  Blue Ridge’s
case authorities do not mean that a person who is not an insured under an
insurance policy is to be treated as one for defense purposes just because of
false allegations made by the damage suit plaintiff.”[3]  Id. at
473.  The court accordingly held it could consider extrinsic evidence to
determine that neither Jimmy nor Scottie was an insured under the Hanover
policy.  Id.  

The “pure coverage” question the court faced in Blue
Ridge did not involve the merits of the case because the insurer took the
position that neither Jimmy nor Scottie were insureds, and therefore could not
be considered permissive drivers in any case.  Although it is true that
any allegation, true or false, is sufficient to give rise to a duty to defend
when the claim is potentially covered under the insured’s policy, the Blue
Ridge court appropriately drew the distinction that “[t]he status of
‘insured’ is to be determined by true facts, not false, fraudulent, or
otherwise incorrect facts that might be alleged.”  Id.

3

The appellants contend that because the policy named
any of Norstan’s lessors as additional insureds, Liberty Mutual was obligated
to defend anyone sued in that role, regardless of whether the party is actually
a lessor.  To support their position, they cite AccuFleet, Inc. v. Hartford
Fire Insurance Co., 322 S.W.3d 264 (Tex. App.—Houston [1st Dist.] 2009, no
pet.), and Liberty Mutual Insurance Co. v. Graham, 473 F.3d 596 (5th
Cir. 2006), as examples of cases in which courts adhered to the eight-corners
rule “if facts were plead[ed] that would qualify the party as an insured.”  

The appellants cite AccuFleet as a case where
the court ignored extrinsic evidence and “specifically looked at the
plaintiff’s pleadings to determine whether a party was an additional insured,
and therefore, owed a defense under the policy.”  The underlying case involved
an accident in which a Continental Airlines ground tug rear-ended an AccuFleet
vehicle stopped at a stop sign on an airport tarmac.  AccuFleet, 322
S.W.3d at 268.  AccuFleet was a contractor providing services to Continental,
and, pursuant to the terms of their contract, AccuFleet was required to name
Continental as an additional insured under its liability policy.  Id. 
An AccuFleet employee and passenger in the rear-ended vehicle sued AccuFleet
and Continental for alleged injuries, both of which demanded a defense from
AccuFleet’s insurer.  Continental was not named in the policy, but claimed it
was owed a defense under an “additional insured” provision that extended
coverage to any parties AccuFleet was required by contract to include in its
policy.  Id.  The insurer did not respond to either demand, and
Continental eventually settled the claim.  Id.  

The court acknowledged that the contract required
AccuFleet to name Continental as an insured, and that the policy’s “additional
insured” provision included parties AccuFleet was required by contract to name
as inusreds.  Id. at 271.  The court interpreted the policy, however, to
further require that an “additional insured” also meet the definition of
“insured” from a separate section of the policy, a requirement Continental
could not satisfy.  Id. at 271–72.  Therefore, the court was able to
determine coverage did not exist for Continental under the facts alleged in the
petition and the terms of the policy.[4] 
See id.

AccuFleet stands for the unremarkable
proposition that the eight-corners rule applies in the vast majority of cases. 
The appellants are correct that the court “specifically looked at the
plaintiff’s pleadings to determine whether a party was an additional insured,
and therefore, owed a defense under the policy.”  But this observation does not
support the appellants’ position that the policy in this case required Liberty
Mutual to defend any party sued in the role of lessor.  AccuFleet would
further the appellant’s position if the court held that, based on the
information available in the pleadings and policy, the insurer owed Continental
a defense even though extrinsic evidence could show that (1) there was no
potential for coverage even if the pleaded facts were true, or (2) Continental
was actually a total stranger to the policy.  Instead, the AccuFleet court
was able to resolve the question of coverage within the eight-corners rule, and
in doing so it declined to hold the insurer owed Continental a defense
because the eight corners told the court all it needed to know about Continental’s
status as an insured.  

Because AccuFleet did not recognize a duty to
defend that would not have been recognized had the court been allowed to
examine extrinsic evidence, it does not further the appellants’ argument.  It
certainly does not stand for the proposition that Liberty Mutual was obligated
to defend any party sued in the role of Norstan’s lessor without regard to the
party’s actual lessor status.  That simply is not a reasonable reading of the
policy.  See Utica Nat’l Ins. Co. of Tex. v. Am. Indem. Co., 141 S.W.3d
198, 202 (Tex. 2004) (holding the plain language of an insurance policy must be
given effect when the parties’ intent may be discerned therefrom); see also Fiess
v. State Farm Lloyds, 202 S.W.3d 744, 746 (Tex. 2006) (holding if the policy
language has only one reasonable interpretation, then it is not ambiguous and
is construed as a matter of law).  Liberty Mutual contracted to insure Norstan
and its actual lessors, not to defend every party sued in the capacity
as a lessor even though they are strangers to both the lease and the insurance
policy.  

4

            Liberty Mutual Insurance
Co. v Graham is similarly distinguishable.  Graham was involved in an
accident in his company vehicle after he left a restaurant where he had
consumed alcohol while celebrating his birthday.  Graham, 473 F.3d at
597.  He was sued for negligence and his employer was sued for negligently
entrusting the vehicle to Graham.  Id. at 598.  The insurer brought an
action for declaratory judgment asserting it was not required to defend Graham
because his use of the vehicle was unauthorized and in contravention of the
employer’s vehicle-usage policy.  Id.  The insurer sought to introduce
the employer’s vehicle-usage policy, which restricted use of vehicles to
“company related business,” as well as evidence of Graham’s intoxication.  Id.
at 598–99.  In rejecting the insurer’s argument that the court should apply the
exception, the court found “the complaint alleges facts sufficient to infer
Graham was driving with [the employer’s] express or implied permission.  Since
the policy unambiguously covers permissive drivers, the duty to defend is
invoked.”  Id. at 603.  

Ultimately, the Graham court adhered to the
eight-corners rule because the potential for coverage existed under the
facts alleged by the underlying plaintiff.  See id. at 603 & n.25. 
If, in deciding whether the insurer owed a duty to defend, the court had
explored whether Graham was actually intoxicated or had violated the
vehicle-usage policy, it would have impermissibly delved into the merits.  Furthermore,
while the insurer in Graham might have been able to easily prove the
claim meritless upon mounting a defense, it did not argue that Graham was a
total stranger to the policy.  To the contrary, it was undisputed that, at
least in some circumstances, Graham was a permissive user of the company
truck.  

The extrinsic evidence that might have been employed in
Graham is utterly different from that which the trial court used in this
case.  The merits of the claim in the underlying case were not touched by the
trial court’s inquiry in the coverage dispute.  Graham is simply
inapposite.  

C

The appellants further argue that even if we apply an
exception to the eight-corners rule, the extrinsic evidence in this case addresses
not only the coverage question, but also the merits of the underlying claim, a
combination the supreme court expressly rejected in GuideOne.  See 197
S.W.3d at 310.  The extrinsic evidence concerns the merits, the appellants
argue, because the allegation that Weingarten Management was a lessor was “directly
material” and “necessary” to show Johnson was a business invitee and owed a
duty of care by Weingarten Management.  The appellants further argue that
because the terms of the lease would establish that Weingarten Management
retained a right of control over the property, the allegation that Weingarten
Management was a lessor was material in establishing the scope of the duty owed
to Johnson.  

It is true that in a claim properly brought against an
insurer by an actual insured, the existence and terms of a lease could
be a significant factor in determining whether a landlord retained control over
a leased premises.  But here Liberty Mutual seeks to introduce evidence that
Weingarten Management is not a lessor not to undermine the merits of the
plaintiff’s claim but to establish that Weingarten Management is a stranger to
the policy.  The appellants may see the lessor allegation as important to the
merits of their case, but Liberty Mutual’s interest in contradicting it is
confined to disputing Weingarten Management’s status as an “insured.”  

We also note that in each of the previous instances in
which an exception to the eight-corners rule has been applied, the insurer
sought to use a policy exclusion, combined with extrinsic evidence, to show
that the policy excluded coverage even if the underlying allegations were
true.  The strict requirement that the proposed extrinsic evidence not
contradict the plaintiff’s underlying allegations sprang forth from the
rationale behind the eight-corners rule, which requires insurers to defend
their insureds against all covered claims regardless of merit.  Allowing an
insurer to admit extrinsic evidence contradicting a plaintiff’s allegations to
establish the applicability of a policy exclusion would circumvent the very
reason for the eight-corners rule.  

Therefore, under the narrow exception created by the
facts in this case, we conclude that an insurer marking a party seeking a
defense as a total stranger to the policy does not contradict allegations
material to the underlying merits when it shows by extrinsic evidence that
there are no facts that could be pleaded under which the party would be
entitled to a defense.

D

The eight-corners rule prevents an insurer from
refusing to defend an insured based on the lack of merit of the plaintiff’s
case.  See Tri-Coastal Contractors, Inc., 981 S.W.2d at 863.  But applying
the eight-corners rule to pure-coverage questions does not advance this policy. 
Rather than provide a vital protection to the insured, the rule would impose on
insurers the duty to defend parties who—by accident or otherwise—plead
themselves into an insurance policy to which they were previously a stranger.  If
a contract does not exist, a duty to defend should not be allowed to spring
into existence based on artful or inartful pleading.  

Weingarten Management never contracted with Liberty
Mutual to provide insurance, nor was it designated as an additional insured
under the Liberty Mutual policy.  Weingarten Management’s only claim to a
defense from Liberty Mutual is a presumably accidental misidentification in the
underlying petition that cited Weingarten Management as a lessor when it was
not.  But Liberty Mutual’s policy with Weingarten Investors requires it to
defend actual lessors against any claim potentially within the policy.  It does
not require it to defend every entity mistakenly believed to be a lessor.  

We hold the trial court did not improperly consider
extrinsic evidence in granting summary judgment in Liberty Mutual’s favor and
denying the applleants’ partial motion for summary judgment, motion for
rehearing, motion for new trial, and motion for clarification.  The appellants’
first issue is overruled.  

 

 

III

            The appellants argue in
their second issue that in its consideration of extrinsic evidence the trial
court erred in finding there was no fact issue as to whether Weingarten
Management could be considered a lessor under the policy because the lease
between Weingarten Investors and Fashion Cents required the latter to name
Weingarten Management as an additional insured.  The appellants urge us to
interpret the word “lessor” in the policy’s “additional insured” endorsement to
include any entity required by the lease to be named as an insured.  

The appellants cite no authorities to support their
argument other than the general proposition that courts should construe
insurance policies broadly in favor of coverage and that if a policy is
susceptible to more than one interpretation, the uncertainty must be resolved
by adopting the construction most favorable to the insured.  See State Farm
Fire & Cas. Co. v. Reed, 873 S.W.2d 698, 699 (Tex. 1993).  The policy’s
use of the word “lessor,” however, is not susceptible to multiple
interpretations.  It is not a reasonable interpretation to suggest that by
using the word “lessor” the parties intended to incorporate unidentified and
unlimited parties named in another contract as additionally insured parties. 
Appellants’ second issue is overruled.  

IV

            The appellants argue in
their third issue that the trial court erred in granting summary judgment
because there is a fact issue as to whether Liberty Mutual is estopped from
denying Weingarten Management is a lessor.  The appellants’ argument proceeds
as follows:  First, a certificate of insurance was issued by “Liberty Mutual
Group” to both Weingarten Investors and Weingarten Management listing both a
workers’ compensation policy and a general liability policy in a manner that
the appellants contend made no distinction between the various Liberty entities
providing the policies.  Then, Liberty Insurance Company, Norstan’s workers’
compensation carrier, intervened in the underlying suit and adopted all of the
plaintiff’s allegations.  Additionally, the appellants contend that subsequent
correspondence did not distinguish between the entities.  Therefore, appellants
argue, Liberty Mutual Group represented to Weingarten Management that one
carrier issued both policies and Liberty Mutual is estopped from arguing
Weingarten Mangement’s lessor status because Liberty Insurance Company arguably
adopted all of the plaintiff’s allegations.    

A judicial admission results when a party makes a
statement of fact that conclusively disproves a right of recovery or defense
currently asserted.  See Richards v. Comm’n for Lawyer Discipline, 35
S.W.3d 243, 247 (Tex. App.—Houston [14th Dist.] 2000, no pet.)  To constitute a
judicial admission, the statement relied on must be (1) made in the course of a
judicial proceeding; (2) contrary to an essential fact or defense asserted by
the person making the admission; (3) deliberate, clear, and unequivocal; (4)
related to a fact upon which judgment for the opposing party could be based;
and (5) the enforcement of the admission would be consistent with public
policy.  Id.; see also Brown v. Lanier Worldwide, Inc., 124
S.W.3d 883, 900 (Tex. App.—Houston [14th Dist.] 2004, no pet.).  

Assuming arguendo that all the above elements
are fulfilled and that the statement constitutes a judicial admission on the part
of Liberty Insurance Company, the appellants have cited no authority supporting
their argument that this admission should be imputed to Liberty Mutual. 
Although the appellants present evidence that Liberty Mutual Group may have
been less than clear in distinguishing between its subsidiaries in a
certificate of insurance and in correspondence, it has not directed us to any authority
standing for the proposition that all the Liberty entities should therefore be
treated as the same for purposes of determining whether one and therefore all
made a judicial admission.  As such, the argument is waived.  See Tex. R. App.
P. 38.1(i); Nyugen v. Kosnoski, 93 S.W.3d 186, 188 (Tex. App.—Houston
[14th Dist.] 2002, no pet.)  Appellants’ third issue is overruled.  

* * *

Because we
have overruled appellants’ first through third issues and held Liberty Mutual owed
no duty to defend Weingarten, we do not reach appellants’ issues four through
six.  For the foregoing reasons, we affirm the trial court’s judgment.

 

                                                                                    

                                                                                    

                                                                        /s/        Jeffrey
V. Brown

                                                                                    Justice

 

 

 

Panel consists of Justices
Anderson, Frost, and Brown (Frost, J., dissenting).  

 









[1] The Cook court
explained the reasoning behind its assumption this way:  “Unless the Boll
case is misapprehended or the writ action by the Supreme Court is based on
something not disclosed in the Civil Appeals’ Court opinion, it is evident that
the Supreme Court regarded Heyden as distinguishable from Boll,
and countenanced in the latter a consideration by the trial court of facts
ascertained from a source other than the claimant’s petition when the trial
judge determined the insurer’s duty.”  Cook, 418 S.W.2d at 715.





[2] Federal courts have also
recognized and applied the exception.  See, e.g, Northfield, 363
F.3d at 531; John Deere Ins. Co. v. Truckin’ U.S.A., 122 F.3d 270,
272–73 (5th Cir. 1997); W. Heritage Ins. Co. v. River Entm’t, 998 F.2d
311, 313–15 (5th Cir. 1993); Blue Ridge Ins. Co. v. Hanover Ins. Co.,
748 F. Supp. 470, 473 (N.D. Tex. 1990).  Other Texas courts have acknowledged
the exception but have declined to apply it on the facts presented.  See,
e.g., AccuFleet, Inc. v. Hartford Fire Ins. Co., 322 S.W.3d 264, 273
(Tex. App.—Houston [1st Dist.] 2009, no pet.); Mid-Continent Cas. Co. v.
Safe Tire Disposal Corp., 16 S.W.3d 418, 421 (Tex. App.—Waco 2000, pet.
denied); Tri-Coastal Contractors, Inc. v. Hartford Underwriters Ins. Co.,
981 S.W.2d 861, 863–64 (Tex. App.—Houston [1st Dist.] 1998, pet. denied).





[3] The court did not cite
which authorities Blue Ridge presented, but did state the cases stood for the
proposition that the duty to defend arises “even if ‘the allegations of the
suit are groundless, false, or fraudulent.’”  Blue Ridge, 748 F. Supp.
at 473.  





[4] The AccuFleet
court determined that Continental did not qualify for liability coverage
because the accident in question did not involve Continental’s use of a covered
AccuFleet vehicle, but Continental’s use of one of its own vehicles.  322
S.W.3d at 271–72.  The express language of the policy did not cover such a
loss.  Id.